**In re Richard R. ROGERS, Mary Kay Holding Corporation and Mary Kay Inc., Relators.**

No. 05–06–00706–CV.

Court of Appeals of Texas, Dallas.

Aug. 22, 2006.

Scott D. Weber, Mary C. Burdette, Calloway, Norris, Burdette & Weber, Jeffrey W. Hellberg, Jr., Jeffrey W. Hellberg, Jr., P.C., Dallas, for Relators.

Paul M. Koning, Hughes & Luce, L.L.P., James J. Hartnett, Jr., Will Ford Hartnett, Melinda J. Hartnett, The Hartnett Law Firm, Kenneth W. Biermacher, Kane Russell Coleman & Logan, P.C., Carlyle H. Chapman, April Renee Terry, Cynthia Keely Timms, Locke, Liddell & Sapp, L.L.P., Nathan K. Griffin, D. Woodard Glenn, P.C., Dallas, for Real Party In Interest.

Before Justices MORRIS, WHITTINGTON, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

These proceedings involve a single order addressing a discovery dispute between Kathlyn Elizabeth Kerr (the plaintiff below and real party in interest in this Court) and Richard R. Rogers (a defendant below and relator in this Court).

### BACKGROUND

Rogers is Kerr's uncle and Mary Kay Ash's son. He is also one of two trustees[1] of certain trusts funded by Ash to benefit her children and their descendants. Kerr, Ash's granddaughter, is the beneficiary of two of those trusts. The bulk of the trusts' assets is stock in Mary Kay Holding Company.

Kerr sued Rogers, individually and as co-trustee of the two trusts, for an accounting and for breach of fiduciary duty. The breach of fiduciary duty claim includes allegations of imprudent management, self-dealing, failure to diversify the assets of the trusts, failure to make sufficient and reasonable distributions from the trusts, and failure to disclose certain information to Kerr. As to remedies, Kerr sought: removal of both trustees; diversification of the trusts' assets, including sale of the Mary Kay Holding Company stock; modification—including partition—of the trusts; attorney's fees; and damages.

The discovery dispute centers on interrogatories and requests for production (collectively, the "Discovery Requests") served upon Rogers by Kerr. Rogers objected to most of the Discovery Requests on a number of grounds, including relevance to Kerr's pleaded claims. Kerr filed a motion to compel responses from Rogers. Rogers in turn filed a motion to quash, seeking protection from the trial court. The trial court signed its Order Sustaining Motion to Compel and Overruling Motions to Quash and for Protection (the "Order"), requiring Rogers to respond to the interrogatories and produce requested documents within thirty days of the Order. The Order also required the parties to file an Agreed Protective Order and Confidentiality Agreement; Rogers's production and responses would be made subject to that agreement.

Rogers filed a petition for writ of mandamus in this Court, asking us to order the trial court to vacate its Order. He also sought temporary relief in the form of a stay of the Order's response and production date until the merits of his petition could be resolved in this Court.

One category of information sought by the Discovery Requests included documents belonging to, and information about, Mary Kay Holding Company and Mary Kay Inc. (together, "Mary Kay").[2] Rogers

---

1. The other trustee, the Bank of America, is not involved in this proceeding.

2. Mary Kay Inc. is a wholly owned subsidiary of Mary Kay Holding Company.

objected to these requests, *inter alia*, because the documents belonged to Mary Kay and he did not have possession, custody, and control over them. Mary Kay was not made a party below, but it filed a motion for protection based on the Discovery Requests that related to Mary Kay's documents. The trial court denied Mary Kay's motion. Mary Kay then filed its own petition in this Court, seeking the same relief as Rogers: a temporary stay of the Order's response date and, ultimately, a directive that the trial court vacate its Order.

We granted the requested temporary stay. We consolidated the two petitions in accord with the parties' request. We now address the merits of relators' petitions.

## Mandamus and Discovery Standards

 Mandamus will lie only to correct a trial court's clear abuse of discretion when no adequate remedy by appeal exists. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). If a discovery order compels production of patently irrelevant documents, then there is no adequate remedy by appeal. *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex.2003) (such an order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party"). Likewise, if a party is ordered to produce documents belonging to another entity in a situation that would cause the party to violate a duty owed to the other entity, then there is no adequate remedy by appeal. *See In re Kuntz*, 124 S.W.3d 179, 184 (Tex.2003). We conclude that if Rogers is erroneously forced to produce the challenged documents and respond to the challenged interrogatories, then relators would have no adequate remedy by appeal. Thus, mandamus will lie if the Order represents a clear abuse of the trial court's discretion.

 The rules of civil procedure define the general scope of discovery to include nonprivileged matter that is relevant to the subject matter of the action. Tex.R. Civ. P. 192.3(a). The material sought need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence. *Id.* Generally, the scope of discovery in a particular case is within the trial court's discretion. *CSX*, 124 S.W.3d at 152. However, a trial court abuses its discretion by ordering discovery that exceeds the scope permitted by the rules of procedure. *Id.* And although the scope of discovery permitted by the rules is broad, discovery requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *Id.*

 Where an order compels discovery that is well outside proper bounds, the order is reviewable by mandamus. *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 176 (Tex.1999). The supreme court has acknowledged that "discovery is not only 'a tool for uncovering facts essential to accurate adjudication,' but also 'a weapon capable of imposing large and unjustifiable costs on one's adversary.'" *Id.* at 180. With that understanding, the supreme court has set forth guidelines intended to curb the excesses of discovery abuse:

First, discovery requests must be reasonably tailored to include only matters relevant to the case.... Second, discovery may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party.... Third, a court may "in the interest of justice," issue a protective order to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights."

*Id.* at 180–81 (citations omitted).

 In the trial court, the party resisting discovery bears the burden of prov-

ing the request lies outside the guidelines described by the rules and the supreme court. *See* TEX.R. CIV. P. 193.4(a) (party objecting to discovery must present any evidence necessary to support objection). In a mandamus proceeding, the party resisting discovery bears the burden of establishing a clear abuse of discretion by the trial court. *CSX*, 124 S.W.3d at 151. A trial court commits a clear abuse of discretion if its action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996)).

### ROGERS'S RELEVANCE ISSUE

Rogers argues the trial court abused its discretion when it ordered him to respond to Kerr's Discovery Requests, which (according to Rogers) were totally unrelated to the administration of the trusts, assets of the trusts, or actions of the co-trustee, without any limitation or regard to Rogers' objections. Rogers emphasizes the first two rules set forth above: (1) discovery must be reasonably tailored to include relevant matters, and (2) discovery may not be used as a fishing expedition. He divides the Discovery Requests into six categories,[3] and argues that each category (1) seeks discovery of matters that are not relevant to the claims Kerr has pleaded, and (2) amounts to "fishing" for information that could lead to new claims against Rogers. He urges us to look to Kerr's pleadings and argues the Discovery Requests do not seek materials relevant to Kerr's claims. We review the Discovery Requests by category, as Rogers has framed the inquiry.

*Financial and Other Information Belonging to Mary Kay*

■ It is undisputed that the bulk of the assets of Kerr's trusts is stock in Mary Kay. Thus, information concerning Mary Kay's financial status and prospects is certainly relevant to Kerr's holdings. It is also relevant to Kerr's allegations that Rogers has imprudently managed the trusts, failed to diversify assets of the trusts, and self-dealt in Mary Kay to the detriment of the trusts.

It was not an abuse of the trial court's discretion to order discovery of financial and other information belonging to Mary Kay. Such information on its face is relevant to the dispute at hand or is reasonably calculated to lead to the discovery of admissible evidence. Of course materials may be discoverable but not be in the possession, custody and control of the relevant person. That is a separate issue and, as to Mary Kay documents, it is addressed below. As to documents and information within the possession, custody, or control of Rogers, he must respond to these requests.

*Documents and Information Relating to Various Partnerships and Corporations*

■ Rogers's next category addresses partnerships and corporations other than Mary Kay, and he complains these entities are not relevant to the suit, charging that "only one of which is even mentioned in [Kerr's] Petition." Rogers has not pointed us to any authority, and we are unaware of any, that requires discoverable sources to be specifically named in the requesting party's pleading. Kerr has pleaded, as an "example" of Rogers's self-dealing, allegations of one of these entities (Richmont

---

**3.** Rogers has responded to the sixth category, correspondence between the parties, and it will not be discussed here.

Properties, Ltd.) purchasing the Mary Kay headquarters building under terms that may have enriched Rogers or his family at the expense of Mary Kay, whose stock is the primary asset of Kerr's trusts. Kerr argues that as her trustee, Rogers had the obligation to put the trusts' interests before his own. Kerr also alleges that the Mary Kay entities own part of Richmont Properties through another partnership. She argues all these various entities are similarly interrelated.

Rogers's affidavit addresses these entities in sub-groups: he states he has "no relationship, involvement, or ownership interest" in one list of companies; "no ownership interest" in one other company; and "no ownership" in another. He admits owning one entity, but claims its information is not relevant because it is not owned by Mary Kay. Such parsing of the language of ownership is not the same as proving the entities' information is not relevant to Kerr's claims. The pleadings in this case allege broad violations of fiduciary duties, including self-dealing by Rogers to the detriment of the trusts. In the absence of any challenge to those pleadings that led the court to narrow their scope, we cannot say that information concerning these entities might not lead to the discovery of admissible evidence. Rogers has not carried his burden of proof on this issue; we find no clear abuse of discretion by the trial court.

### Documents and Information Concerning [Rogers's] Personal Finances, Including Certain Companies and Trusts He Created

██ Rogers's third category of Discovery Requests address his own personal finances. His affidavit admits he created three private trusts about which Kerr seeks information; he argues that because the trusts are not owned by Mary Kay,

they are not relevant. But Kerr's pleadings put Rogers's own finances at issue when she alleged self-dealing. Kerr alleges that Rogers's "excessive compensation and benefits" from Mary Kay represents income that could have gone to the trusts. As has been addressed, Kerr alleges Rogers usurped Mary Kay and trust opportunities to benefit himself and his immediate family. Rogers did not challenge the scope or nature of the pleadings' allegations of self-dealing. He has not carried his burden of proving requests that could lead to evidence of self-dealing are beyond the proper scope of discovery. We cannot say the trial court abused its discretion in compelling this discovery.

### Documents and Information Concerning Mary Kay Ash and the Estate of Mary Kay Ash

██ Next, Rogers objects to discovery related to Mary Kay Ash personally and to her estate. We see a significant distinction between this category of documents and the others sought by Kerr. In the requests discussed above, Kerr seeks information relevant on its face (documents related to the companies whose stock composes the assets of the trusts at issue) or evidence related to Rogers and his handling of finances that may be traceable back to the finances of the Mary Kay companies. In this category, Kerr seeks information related only to the person of Mary Kay Ash. Ash's estate represents Ash's choices and decisions for transferring her own property. We cannot see any way in which these documents could lead to the discovery of admissible evidence against Rogers. On their face, these requests are not relevant within the meaning of the discovery rules. We conclude the trial court abused its discretion in ordering Rogers to respond to Interrogatory No. 12 and Requests for Production Nos. 36, 37, and 38.

## Other Lawsuits

■ Finally, Rogers objects to producing documents from and information concerning other lawsuits. These requests are not irrelevant on their face to the issues at hand. Rogers's affidavit does not address these documents or his participation in any other lawsuits. Nor does he address the issue in his brief to this Court. We conclude Rogers has not carried his burden to show the documents are outside the scope of discovery in this case.

However, another argument made by Rogers in the trial court does cause us to conclude the trial judge clearly abused his discretion in ordering blanket production of all documents relating to other lawsuits. Production of documents in one lawsuit does not mean the documents may be produced without restriction in an entirely different lawsuit. Some of the documents ordered produced are subject to confidentiality agreements or protective orders in the other lawsuits. *See, e.g., In re Shell E & P, Inc.*, 179 S.W.3d 125, 130–31 (Tex. App.-San Antonio 2005, orig. proceeding). Kerr cannot obtain production of the documents in this lawsuit without regard to the limitations imposed in the other lawsuits and the trial judge clearly abused his discretion in concluding he could. Rogers must respond to Interrogatory No. 7 and he should produce all documents in the lawsuits listed in Request for Production No. 22 that are not subject to a confidentiality agreement or protective order in the other lawsuit.

## Conclusion

The petition in this case is broadly pleaded; it has not been challenged or narrowed through special exceptions or any other pleading vehicle. Rogers cannot attempt to limit the scope of the pleading through discovery objections. We decide Rogers's first issue in his favor only as regards the following Discovery Requests:

- Discovery Requests relating to Mary Kay Ash personally or to her estate; and
- Discovery Requests seeking production of documents from other lawsuits that are subject to a confidentiality agreement or protective order in the other lawsuit.

In all other respects, we decide Rogers's first issue against him.

### ROGERS'S AND MARY KAY'S POSSESSION, CUSTODY, AND CONTROL ISSUE

■ The Order instructs Rogers to "produce the requested documents" within thirty days of the Order. Certainly, the Order only intends production of documents within Rogers's possession, custody, or control. *See* TEX.R. CIV. P. 192.3(b). An order to produce documents that are not within a party's possession, custody, or control would be an abuse of discretion. *See Kuntz*, 124 S.W.3d at 181 (court abuses its discretion if discovery order conflicts with Texas Rules of Civil Procedure). But Rogers and Mary Kay maintained below that documents belonging to Mary Kay, which Kerr requested, are not within the possession, custody, or control of Rogers in his individual capacity or in his capacity as co-trustee.[4] The Order does not speak

---

4. Within the category of documents belonging to Mary Kay is a subset of documents that Mary Kay has turned over to Rogers pursuant to a shareholder request. Those documents are within Rogers' actual possession now, and we presume they have been produced to Kerr. Thus, the Mary Kay documents on which

Rogers and Mary Kay seek a ruling do not include the documents Rogers obtained as a shareholder.

The parties raise a number of issues concerning Rogers' shareholder status under this heading. Some of those issues may be re-

specifically to these documents or this issue. The parties and Mary Kay appear to believe the trial court ruled implicitly that Rogers *does* have possession, custody, or control of corporate documents belonging to Mary Kay and that he must produce them. We discern no such ruling in the Order. An adverse ruling by the trial court is a fundamental prerequisite for any mandamus proceeding. *See In re Dynamic Health, Inc.,* 32 S.W.3d 876, 881 (Tex. App.-Texarkana 2000, orig. proceeding). In the absence of a clear, adverse ruling by the trial court on an issue, we will not address allegations of an abuse of discretion concerning that issue. The Order contains no such clear ruling on the issue of possession, custody, and control of the Mary Kay documents. Accordingly, Rogers and Mary Kay have not shown they are entitled to mandamus relief on this issue.

### CONCLUSION

The trial court abused its discretion by ordering Rogers to respond to Interrogatory No. 12 and Requests for Production Nos. 36, 37, and 38. The trial court also abused its discretion by ordering Rogers to produce documents that are subject to confidentiality agreements or protective orders in other lawsuits in request for Production No. 22. We conditionally grant Rogers's writ on these points. In all other respects, we deny Rogers's petition.

We direct the trial court to modify its Order in accord with this opinion. We are confident the court will promptly comply, and the writ will issue only if it does not.

solved by the discovery that is being ordered