In re JDN REAL ESTATE–McKINNEY
L.P., Relator.

In re City of McKinney, Relator.

Nos. 05–06–01314–CV, 05–06–01315–CV.

Court of Appeals of Texas,
Dallas.

Dec. 28, 2006.

Don Chester Griffin, Harold Dixon Montague, Catherine Bukowski Smith, Vinson & Elkins, LLP, Houston, for relator in No. 05-06-01314-CV.

G. Luke Ashley, Michael E. Schonberg, Thompson & Knight, P.C., Dallas, Robert F. Brown, Kent S. Hofmeister, Brown & Hofmeister, L.L.P., Richardson, for relator in No. 05-06-01315-CV.

Thomas P. Brandt, Fanning, Harper & Martinson, Michael Ecuyer Schonberg, Dallas, Mark S. Houser, Robert F. Brown, Brown & Hofmeister LLP, Richardson, for real party in interest in No. 05-06-01314-CV.

Harold Dixon Montague, Vinson & Elkins LLP, Don Chester Griffin, Houston, Mark S. Houser, Brown & Hofmeister LLP, Richardson, for real party in interest in No. 05-06-01315-CV.

Before Justices WRIGHT, O'NEILL, and LANG.

## OPINION

Opinion by Justice LANG.

JDN Real Estate—McKinney L.P., relator in cause no. 05-06-01314-CV, seeks a writ of mandamus ordering the Honorable Gregory T. Brewer, Judge, County Court at Law No. 5, Collin County, Texas: (1) to vacate his amended order of August 23, 2006 granting a writ of possession to the City of McKinney, real party in interest in cause no. 05-06-01314-CV, and to dismiss the case; and (2) to vacate the portion of his September 21, 2006 order denying JDN's first amended motion to compel with respect to 26 documents and to enter an order compelling production.

The City of McKinney, relator in cause no. 05-06-01315-CV, seeks a writ of mandamus ordering the Honorable Gregory T. Brewer, Judge, County Court at Law No. 5, Collin County, Texas to vacate the portion of his September 21, 2006 order compelling it to produce 13 documents to JDN Real Estate—McKinney L.P., real party in interest in cause no. 05-06-01315-CV.

JDN's petition for a writ of mandamus is denied. McKinney's petition for a writ of mandamus is denied, in part, and conditionally granted, in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

McKinney and the McKinney Economic Development Corporation (MEDC), which is a corporation created by McKinney to promote economic development, were involved in the planning, development, and acquisition of property for the McKinney Gateway Project. The Gateway Project requires 91 acres at the intersection of U.S. 75 and State Highway 121 for upscale retail stores and restaurants, an office complex, convention space, and a Collin County Community College facility. As a result, on July 15, 2005, the McKinney City Council issued a resolution for the condemnation of JDN's property located at the site of the Gateway Project. Attached to the resolution was a metes and bounds description of the property which stated JDN's property encompassed 9.085 acres.

Also, on July 15, 2005, McKinney initiated a condemnation action in the County Court of Law No. 5 to acquire JDN's

property through eminent domain, attaching a metes and bounds description of the property that stated it encompassed 9.085 acres of JDN's property. The trial court appointed three special commissioners, who scheduled the matter for a hearing to assess the damages. On November 14, 2005, McKinney filed its first amended condemnation petition, which amended the description of the property to state it encompassed 8.7898 acres because the Texas Department of Transportation (TXDot) had already condemned 0.2952 acres of the JDN property it sought to acquire. However, McKinney did not change the metes and bounds description of the property. On November 21, 2005, after a hearing that JDN did not attend, the Special Commissioners issued an award assessing damages in the amount of $3,503,361 to be paid by McKinney to JDN for 8.7898 acres of JDN property. However, on November 29, 2005, JDN filed its objections with the trial court claiming the Special Commissioners failed to apply the correct measure of damages when determining adequate compensation and requesting a jury trial.

On May 11, 2006, McKinney paid $3,503,361 into the registry of the court. On May 30, 2006, McKinney filed a second amended petition for condemnation that amended the description of the property to state it encompassed 10.144 acres minus the 0.2952 acres that had already been condemned by TXDot, which equals a total of 9.8488 acres. However, McKinney did not change the metes and bounds description of the property. On July 5, 2006, McKinney filed an application for a writ of possession. A hearing was held on McKinney's application on July 14, 2006. On August 2, 2006, the trial court ordered a writ of possession permitting McKinney

to take immediate possession of the property. On August 17, 2006, JDN filed a motion for reconsideration or, in the alternative, motion for clarification and to stay the order granting a writ of possession. On August 23, 2006, the trial court issued an amended order granting a writ of possession, which also permitted McKinney to take immediate possession of the property.

Meanwhile, the parties proceeded with discovery. On February 3, 2006, McKinney served its objections and answers to JDN's requests for production. On February 20, 2006, McKinney produced its documents. Included in the production were approximately 500 pages of emails, letters, and memoranda between McKinney, MEDC, O & S Holdings, L.L.C., which is a competitor of JDN, and, in some instances, their respective attorneys, Robert F. Brown [1] and Mark Houser,[2] both of Brown & Hofmeister, L.L.P. Also, on February 20, 2006, JDN issued a subpoena to MEDC requesting production of documents. After McKinney and MEDC produced their documents, counsel for JDN sent a series of emails to Brown and Houser, which inquired about what JDN claimed was a discrepancy in production between McKinney and MEDC, and requested documents that were referenced in emails and documents produced by McKinney. Also, counsel for JDN referred to some of the emails produced by McKinney during a hearing. In response, counsel for McKinney did not assert privilege or inadvertent production.

On June 2, 2006, JDN filed a motion to dismiss McKinney's condemnation case, which referenced an email that had been produced by McKinney. As a result, on June 5, 2006, McKinney filed its first

---

1. Brown is attorney of record for McKinney and has appeared and filed documents on behalf of MEDC.

2. Houser is the city attorney for McKinney and the general counsel for MEDC.

amended withholding statement invoking the "snap-back" provision of Texas Rule of Civil Procedure 193.3 as to that specific email. On June 21, 2006, McKinney filed its second amended withholding statement claiming it had inadvertently produced an additional 106 privileged documents and first became aware of its mistake on June 12, 2006. On June 27, 2006, McKinney sent JDN's counsel a list identifying the 107 documents it claimed were inadvertently produced and requested their return. In response, on July 10, 2006, JDN filed a motion for protection and a motion to compel production of the 107 documents. JDN argued: (1) McKinney had waived the privilege through undue delay, disclosure to third parties, and offensive-use; and (2) the crime-fraud exception to the privilege applied. On July 11, 2006, McKinney filed a motion for protection seeking the return of the 107 documents. After a hearing on July 14, 2006, the trial court granted McKinney's motion for protective order prohibiting the use of the 107 documents and ordering their return, and denied JDN's motion for protection. However, the trial court did not rule on JDN's motion to compel.

■ On August 22, 2006, McKinney sent JDN a privilege log that referenced the 107 documents and included an additional document for a total of 108 documents. On August 29, 2006, JDN filed an amended motion to compel seeking production of the 108 documents. Forty-three of those documents were submitted to the trial court for *in camera* review. On September 21,

2006, after a hearing, the trial court granted JDN's amended motion to compel, in part, and ordered the production of 14 documents, document nos. 1a, 5i, 32, 35, 47, 69a, 90, 100,[3] 103a, 103b, 105b, 105c, 107, and 108, because those documents were not privileged. However, the trial court denied JDN's amended motion to compel with respect to the remaining 94 documents because those documents were privileged, the privilege was not waived, and the crime-fraud exception to the privilege did not apply.

## II. STANDARD FOR MANDAMUS

■ Traditionally, mandamus will not issue unless: (1) the trial court has committed a clear abuse of discretion; and (2) there is no adequate remedy by appeal. *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex.1999) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding)); *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 723 (Tex.App.-Dallas 2005, orig. proceeding).

### A. Abuse of Discretion

■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 723. In determining whether the trial court abused its discretion in the resolution of factual matters, the court of appeals

---

**3.** The trial court orally stated that document no. 100 was privileged, but the written order states it is not privileged. JDN argues the trial court abused its discretion when it denied JDN's amended motion to compel, finding document no. 100 was privileged, while McKinney argues the trial court abused its discretion when it granted JDN's amended motion to compel, finding document no. 100 was not privileged. Any time there is a conflict between oral pronouncements made by a trial judge and his written order, the matters set forth in the written order control. *See Murray v. Murray*, 350 S.W.2d 593, 597 (Tex. Civ.App.-Dallas 1961, no writ); *Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381, 387 (Tex. Civ.App.-Fort Worth 1970, pet. ref'd n.r.e.).

may not substitute its judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex.2004) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 724. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker*, 827 S.W.2d at 840; *In re Tex. Am. Express*, 190 S.W.3d at 724. Accordingly, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840; *In re Tex. Am. Express*, 190 S.W.3d at 724. If the trial court did not abuse its discretion, it is error for the court of appeals to grant mandamus relief. *In re Sanders*, 153 S.W.3d at 56; *In re Tex. Am. Express*, 190 S.W.3d at 724.

### B. No Adequate Remedy by Appeal

The second requirement for mandamus relief, that the petitioner has no adequate remedy by appeal, "has no comprehensive definition." *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005) (orig. proceeding) (citing *In re Prudential*, 148 S.W.3d 124, 136 (Tex.2004) (orig. proceeding)); *In re Tex. Am. Express*, 190 S.W.3d at 724. Determining whether a party has an adequate remedy by appeal requires a "careful balance of jurisprudential considerations" that "implicate both public and private interests." *See In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. "When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. An appeal is inadequate when the parties are in danger of permanently losing substantial rights.

*In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex.2004) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 724. Such a danger arises when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record. *In re Van Waters*, 145 S.W.3d at 211; *In re Tex. Am. Express*, 190 S.W.3d at 724.

### III. INCONSISTENCY IN WRIT OF POSSESSION

In its first issue, JDN argues the trial court abused its discretion when it granted McKinney possession of more property than it sought to have condemned. JDN argues the amended writ of possession allows McKinney to possess 9.85 acres of JDN's property while McKinney's first amended condemnation petition, which was the last amended petition filed before the Special Commissioners' award, refers to 8.7898 acres. Also, JDN contends the Special Commissioners' assessed damages for 8.7898 acres, not 9.85 acres, so McKinney's deposit in the registry of the court is inadequate to support the amended writ of possession. Further, JDN claims the trial court did not have jurisdiction to enter an amended writ of possession for 9.85 acres because the Special Commissioners' award addressed only 8.7898 acres. McKinney responds that it satisfied all of the statutory prerequisites entitling it to immediate possession of JDN's property. Also, McKinney responds that, even if the trial court abused its discretion and the jury determines McKinney does not have a right to condemn JDN's property, section 21.044 of the Texas Property Code provides for a specific remedy that would be available to JDN.

### A. Applicable Law

Pursuant to section 21.044(a) of the Texas Property Code, if a condemnor

took possession of property pending litigation and did not have the right to condemn that property, the court may award the property owner the damages that resulted from the condemnor's temporary possession. *See* TEX. PROP.CODE ANN. § 21.044(a) (Vernon 2000). This statutory remedy provides for damages to the property owner for the use of the property when the condemnor does not have the right to condemn that property. *See Harris County v. Gordon,* 616 S.W.2d 167, 169 (Tex.1981) (discussing former article 3268). As a result, this statutory remedy provides a property owner with an adequate remedy by appeal if it is later determined the condemnor did not have the authority to condemn the property. *See id.*

### B. Application of the Law to the Facts

The trial court's writ of possession authorizes McKinney to take immediate possession of JDN's property. Specifically, it states:

[McKinney] is authorized to take immediate possession of [JDN's] property sought to be condemned in this proceeding, as described in Exhibit A to this Order.

Attached to the writ of possession are Exhibits A and B, although Exhibit B is not referenced in this order. These exhibits are identical to the exhibits attached to McKinney's second amended petition for condemnation. Exhibit A is a metes and bounds description of the JDN property and states it encompasses 10.144 acres. Exhibit B is a metes and bounds description of the JDN property already condemned by TXDoT and states it encompasses 0.2952 acres.

The trial court's amended writ of possession also authorizes McKinney to take immediate possession of JDN's property. Specifically, it states:

[McKinney] is authorized to take immediate possession of [JDN's] property sought to be condemned in this proceeding, as described in Exhibit "A" to this Order but excluding the property described in Exhibit "B."

However, there are no exhibits attached to the trial court's amended writ of possession.[4] Accordingly, there is nothing in the record that shows the trial court authorized McKinney to take immediate possession of an amount of property in excess of the acreage stated in the Special Commissioners' award.

Nevertheless, even if the trial court's amended writ of possession is for 9.85 acres, the alleged non-conformity is a claim for which there is an adequate remedy, which is provided in section 21.044 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 21.044(a); *Harris County,* 616 S.W.2d at 169. Accordingly, we conclude that, even if the trial court abused its discretion by granting McKinney possession of more property than it sought to have condemned, JDN has an adequate remedy by appeal. *See Harris County,* 616 S.W.2d at 169.

JDN's first issue in this original proceeding is decided against it.

---

4. The court clerk certified that exhibits A and B are not attached to the amended writ of possession. However, McKinney attempted to supplement the record with confirmation from the court reporter that the exhibits were attached when the amended writ of possession was signed, but they were subsequently detached. Under the rules of appellate procedure, the record of this proceeding is the record certified by the court clerk. *See generally,* TEX.R.APP. P. 34.5(a)(5) (discussing appeals). Accordingly, the amended writ of possession in the record which we consider has no exhibits.

## IV. DISCOVERY

JDN's second issue and McKinney's sole issue both relate to the trial court's discovery orders regarding the production of documents that McKinney claims are privileged. Of the 108 documents McKinney claimed were privileged, the trial court determined that 94 documents were privileged and 14 documents were not privileged. JDN argues the trial court abused its discretion when it determined 26 of the 94 documents were privileged. Conversely, McKinney argues the trial court abused its discretion when it found that 13 of the 14 documents were not privileged.

### A. Waivers and Exceptions Requiring Production of Privileged Documents

In its second issue, JDN argues the trial court abused its discretion when it denied, in part, JDN's amended motion to compel production with regard to 26 of the 94 documents the trial court determined were privileged. JDN argues the privilege was waived or an exception to the privilege applies, as follows: (1) McKinney waived any privilege by undue delay; (2) McKinney waived any privilege because it disclosed the information to a third party; (3) McKinney waived any privilege pursuant to the offensive-use doctrine; and (4) the crime-fraud exception applies to McKinney's assertion of privilege.

### 1. Undue Delay

JDN argues McKinney waived any privilege by undue delay because McKinney was aware of its mistakes in production before June 12, 2006, the date McKinney claims it first became aware of its mistake in production, and it did not properly

amend its withholding statement for 26 documents as follows: document nos. 2, 5f, 5g, 23, 27, 31a, 33a, 55, 56b,[5] 56c, 56d, 73a, 76d, 76e, 76h, 76i, 89a, 91, 94, 95a, 95b, 96, 97a, 99a, 100, and 106. Specifically, JDN claims that its references to the documents in emails sent to McKinney's counsel and during hearings was sufficient for McKinney to become aware of any mistake in its production of the privileged documents. Also, JDN contends the privilege logs were not sufficiently specific to preserve the privilege claimed and, although McKinney amended its privilege log to be more specific, the amendments were too late. McKinney responds that its counsel, Brown and Houser, both testified the production of the 108 documents was inadvertent. Also, there was testimony respecting the inadvertent production as follows: (1) the first allegedly privileged email was not discovered until June 2, 2006; (2) the privileged nature of the additional 106 documents was not discovered until June 12, 2006; (3) the privileged nature of the MEDC documents was not discovered until August 17, 2006; and (4) the final allegedly privileged document, document no. 108, was not discovered to have been produced until August 21, 2006. Further, it is asserted that within 10 days of discovering each inadvertent production, McKinney and MEDC served an amended withholding statement that identified and raised privilege as to each document.

### a. Applicable Law

Texas Rule of Civil Procedure 193.3(d), known as the "snap-back rule," contemplates that, on occasion, certain materials or information may be inadvertently produced to an opposing party without any

---

**5.** JDN argues the trial court abused its discretion when it determined document no. 55b was privileged. However, document no. 55b was not submitted *in camera* and the trial court's order does not mention document no. 55b. It appears JDN is referring to document no. 56b, which the trial court determined was privileged.

intent on the part of the producing party to waive a claim of privilege. TEX.R. CIV. P. 193.3(d); *In re Parnham,* No. 01–06–00236–CV, — S.W.3d —, —––—, 2006 WL 2690306, *6–7 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding). The rule provides that:

[a] party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if—within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made—the producing party amends the response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court denying the privilege.

TEX.R. CIV. P. 193.3(d); *see In re Parnham,* — S.W.3d at —––—, 2006 WL 2690306 at *6–7. As a result, Texas Rule of Civil Procedure 193.3(d) permits a party to "snap-back" or retrieve materials that it has inadvertently produced and to maintain a claim of privilege with respect to the documents. *In re Parnham,* — S.W.3d at —––—, 2006 WL 2690306 at*6–7.

 Comment 4 to Texas Rule of Civil Procedure 193.3 indicates that subsection (d) was promulgated to avoid waiver by a party when privileged materials or information is at issue. *See In re Lincoln Elec. Co.,* 91 S.W.3d 432, 436–37 (Tex.App.-Beaumont 2002, orig. proceeding [mand. denied] ). Further, comment 4 states that rule 193.3(d) is commonly used in complex cases to reduce costs and risks in large document productions. TEX.R. CIV. P. 193.3 cmt. 4. Also, the focus of rule 193.3(d) is on the intent to waive the privi-

lege, not the intent to produce the material or information. *Id.* A party who fails to diligently screen documents before producing them does not waive a claim of privilege. *Id.* Finally, comment 4 states that to avoid complications at trial, a party may identify, prior to trial, the documents it intends to offer, thereby triggering the producing party's obligation to assert any overlooked privilege. *See id.*

### b. Application of the Law to the Facts

 First, we address JDN's claim that its references to the documents in emails and during hearings was sufficient for McKinney to become aware of any mistake in its production of documents. On March 15, 2006, JDN's counsel sent McKinney's counsel, both Houser and Brown, an email regarding the alleged discrepancy between the correspondence produced by McKinney and that produced by MEDC. That email stated, in part:

After reviewing the MEDC produced documents, I have several questions about MEDC's privilege claims and documents which were not produced. I will put these issues in a letter and forward. However, I am trying to determine what responsive documents MEDC has in its possession, but has not produced based on privilege claim or objection. For example, there are voluminous emails (well over 500 pages worth) between MEDC, [McKinney] and O & S [Holdings] relating to Gateway Project and/or acquisition of JDN's property which were produced by [McKinney] in discovery. MEDC's production contains only 13 pages of emails between these entities. I assume MEDC is withholding these emails based on a claim of privilege or objection, but want to confirm. . . .

Brown responded by email on March 16, 2006. He stated:

We will send you a letter to this effect, but the reason that there are so few emails and documents from MEDC (as compared with [McKinney]) is the MEDC does not retain documents as long as [McKinney]. While [McKinney] is under certain state law mandates to retain documents for certain time periods, MEDC is not. Hence, the universe of documents from which to produce matters from MEDC is much, much smaller than [McKinney]. In fact, there are only a few emails that were retained for privilege (for which we will gladly produce a privilege log).

As indicated in Brown's email, a letter to that effect was sent from Trenton C. Nichols on Brown & Hofmeister letterhead on March 17, 2006.

On March 27, 2006, JDN's counsel sent Brown an email requesting another copy of a memorandum that McKinney had produced. The email referenced the "Gateway 'Options' Memo" and stated, "Can you have someone send me another copy of this memo with the handwritten notes in the left column not cut off." On March 28, 2006, Brown responded to the email attaching an electronic document with the file name, "Gateway Options.pdf." [6] Also, on March 27, 2006, JDN's counsel sent Brown an email that requested missing documents referenced in emails or documents produced by McKinney. The email referenced what was marked as document nos. 5f and 5g, which the trial court subse-

quently determined were privileged. The email stated:

> Here are some missing discovery items related to the documents/emails produced by [McKinney].
>
> 1. April 19, 2005 email from Chris Shane [7] enclosing "master plan with shading to show land ownership." [8] Shane's email forwards the land diagram from TSA Architects. The land diagram referenced is not attached with the emails. Can you please produce the land diagram, and if color is necessary to show the "land ownership" shading, please produce in color;
>
> 2. Any recording (audio or transcript) and handouts/demonstratives related to May 19, 2005 City Council & MEDC Joint Work Session attended by Gary Safady [9] and Chris Shane;
>
> 3. Any recording (audio or transcript) and handouts/demonstratives related to May 23, 2005 City Council session;
>
> 4. Any recordings (audio or transcript) and handouts/demonstratives related to City Council approving or discussing O & S Holdings funding condemnation award for JDN Real Estate's property and/or reimbursement of [McKinney's] attorney fees and Gateway Development matters;
>
> 5. The "Development Schedule" between O & S Holdings, [McKinney] and MEDC referenced in multiple emails (e.g. David Pitstick Nov. 22, 2005 email to Mark Houser [10]); and

---

**6.** The Gateway Options Memo is document no. 108, which the trial court determined was not privileged. McKinney argues the trial court abused its discretion when it determined document no. 108 was not privileged.

**7.** Shane is the Vice President of Acquisitions for O & S Holdings.

**8.** The April 19, 2005 email from Shane to David Pitstick, CEO and President of MEDC, is document no. 33c. McKinney did not as-

sert privilege with respect to document 33c. However, that document was contained in a larger communication for which McKinney did assert privilege.

**9.** Safady is a representative of O & S Holdings.

**10.** The email from Houser to Pitstick is document no. 5f and Pitstick's reply email is document no. 5g, both of which the trial court determined were privileged.

6. Any recording (audio or transcript) and handouts/demonstratives for City Council session related to April 25, 2005 letter from Larry Robinson to David Pitstick titled "Proposed City Assistance on Gateway Project."

On April 7, 2006, counsel for JDN sent Brown an email requesting two specific documents referenced in multiple emails between McKinney, MEDC, and O & S Holdings. That email stated:

Attached is an email string beginning with Chris Serrano of TSA Architects.[11] The email references a "master plan showing land ownership." I previously requested a copy of this master plan in color. Can you please let me know the status of this? Additionally, I requested the Development Schedule between O & S [Holdings], [McKinney] and MEDC referenced in multiple emails (Pitstick 11/22/05 to Houser [12]).

Brown replied to the email on April 10, 2006, stating neither McKinney nor MEDC had a copy of the "Development Schedule," but does not discuss the "master plan." Brown's email states:

On the "Development Schedule," we have checked with both [McKinney] and MEDC and neither of them have a copy of such a document and neither of them remembers seeing one. To the best of [McKinney] and MEDC's recollection, it seems that O & S [Holdings], at one time, discussed such a document, but that it was never prepared by O & S [Holdings], or if it was, it was never sent to [McKinney] or MEDC. Of course, if

we should stumble across something that resembles such a document, we will immediate [sic] produce to you.

During a hearing on May 11, 2006, JDN referenced some of the emails produced by McKinney, which it claimed addressed the payment of McKinney's attorney's fees. These emails are document nos. 31a and 93, which the trial court subsequently determined were privileged. Specifically, counsel for JDN stated:

Instead of "he said/she said," when the time comes, I will show you the E-mails where they discussed payment of attorney's fees and the fact that O & S [Holdings] is going to loan [McKinney] the money, if necessary to get [the JDN] property.

On June 2, 2006, JDN filed a motion to dismiss McKinney's condemnation case and referenced an email that had been produced by McKinney.[13] In response, on June 5, 2006, McKinney asserted the email attached to JDN's motion to dismiss was privileged. Then, on June 21, 2006, McKinney asserted 106 additional documents were privileged and, on August 22, 2006, McKinney asserted document no. 108 was privileged.

■ We observe the emails sent by JDN's counsel to Brown and Houser inquire about an alleged discrepancy between the documents produced by McKinney and MEDC, request more legible copies of documents, and request missing documents referenced in other documents that were produced by McKinney. Fur-

---

**11.** The email string includes document nos. 33a–33d. The email referencing the "master plan" is document no. 33c. McKinney asserted document nos. 33a and 33b were privileged. It did not assert document nos. 33c and 33d were privileged, except to the extent they were part of the larger communication. Documents nos. 33a–33d were submitted to the trial court for *in camera* inspection. The

trial court determined document 33a was privileged, but there is no reference to document no. 33b in the trial court's order.

**12.** Document nos. 5f and 5g.

**13.** JDN's motion to dismiss is not included in the record.

ther, during the hearing on May 11, 2006, JDN referred to "emails," but did not identify the specific documents. JDN has not shown that McKinney intended to waive the privilege. *See id.* JDN's evidence demonstrates that McKinney failed to diligently screen the documents. Although we do not condone such conduct, on this record, we conclude such conduct alone does not waive a claim of privilege. *See id.*

Second, we address JDN's claim that McKinney's privilege logs were not sufficiently specific to preserve the privilege claimed. Although McKinney amended its privilege log to be more specific, JDN argues the amendment was too late. However, JDN's amended motion to compel and petition for a writ of mandamus do not direct us to any specific deficiencies in the privilege log.

Accordingly, we conclude JDN has not demonstrated the trial court abused its discretion when it determined McKinney did not waive, by undue delay, the ability to assert privilege.

## 2. Disclosure to a Third Party

JDN contends McKinney waived any privilege by voluntarily disclosing the privileged information to MEDC, a third party, and failing to timely assert privilege as to the MEDC documents in its withholding statement for 21 of the documents as follows: document nos. 2, 5f, 5g, 23, 27, 31a, 33a, 55, 56d, 73a, 76d, 76e, 76h, 76i, 89a, 94, 95b, 96, 97a, 99a, and 100. JDN states that document nos. 23, 27, 31a,[14] 33a, 55, 76i, 94, 96, 97a, 99a, and 100 are communications between Houser, McKinney, and MEDC. Also, JDN states document nos. 2, 5f, 5g, 56d, 73a, 76d, 76e, 76h, 89a, and 95b[15] are communications between Houser and MEDC. JDN argues MEDC is not a client representative of McKinney, McKinney did not assert the common interest privilege, and even if the common interest privilege applied, document nos. 33a and 47[16] pre-date the anticipation of litigation. McKinney responds that the attorney client privilege applies irrespective of the date litigation was anticipated because McKinney and MEDC are joint clients of Houser and they share a common interest.

### a. Applicable Law

■■■■■ The attorney-client privilege protects confidential communications between a client and his counsel, which were made for the purpose of facilitating the rendition of legal services to the client, from disclosure. TEX.R. EVID. 503(b); *see Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex.1996) (orig.proceeding). This privilege attaches to the complete communication between the attorney and the client.

---

**14.** JDN argues document no. "311" is a communication between Houser, McKinney, and MEDC. However, document no. "311" was not submitted *in camera* and the trial court's order does not mention document no. "311." It appears JDN is referring to document no. 31a, which the trial court determined was privileged.

**15.** In its petition, JDN argues document no. 95a is a document between Houser and MEDC. However, document no. 95a is a document between Houser and the McKinney City Manager and an employee of McKinney or MEDC. Document no. 95b, which JDN refers to throughout this portion of its petition

is a document between Houser and the CEO and President of MEDC. It appears JDN is actually referring to document no. 95b.

**16.** Document no. 47 is an email from a MEDC employee to the McKinney City Manager, Houser, and four employees of McKinney or MEDC. With respect to document no. 47, JDN does not argue McKinney waived any privilege by voluntarily disclosing the privileged information to MEDC and failing to assert privilege as to the MEDC documents. Rather, JDN argues only that, if the common interest privilege applies, document no. 47 pre-dates the anticipation of litigation.

*See Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 589 (Tex.App.-Dallas 1994, orig. proceeding). The subject matter of the information communicated is irrelevant when determining whether the privilege applies. *See id.* The privilege attaches to legal advice and factual information included in the completed communications between the attorney and the client. *See id.*

▆▆▆▆▆ The client waives the attorney-client privilege if he discloses or consents to the disclosure of any significant part of the privileged matter, unless such disclosure itself is privileged. *See* TEX.R. EVID. 511(1). The presence of a third person eliminates the intent for confidentiality on which the privilege rests. *See In re Auclair,* 961 F.2d 65, 69 (5th Cir.1992) (quoting *Hodges, Grant & Kaufmann v. United States Gov't,* 768 F.2d 719, 721 (5th Cir. 1985)). However, the privilege is not waived if the privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication. *See In re Auclair,* 961 F.2d at 69 (quoting *Hodges,* 768 F.2d at 721). Where the attorney acts as counsel for two parties, communications made to the attorney for the purpose of facilitating the rendition of legal services to the clients are privileged, except in a controversy between the clients. *See Harris v. Daugherty,* 74 Tex. 1, 6, 11 S.W. 921, 923 (1889); *see also* 36 TEX. JUR.3D *Evidence* § 536 (2002). Further, when more than one person seeks consultation with an attorney on a matter of common interest, the parties and the attorney may reasonably presume the parties are seeking representation of a common matter. *See In re Auclair,* 961 F.2d at 70.

### b. Application of the Law to the Facts

▆▆▆▆ First, we address JDN's claim that the attorney-client privilege was waived because MEDC is not a representative of McKinney. During the hearing on JDN's amended motion to compel, Brown testified he was the attorney of record for McKinney and, although MEDC is not a party to the case, he has filed documents and appeared before the trial court on behalf of MEDC. Also, Houser stated that both McKinney and MEDC were his clients. David Pitstick, Chief Executive Officer (CEO) and President of MEDC, testified to the effect that MEDC is not a representative of McKinney. However, Pitstick also stated that, although their specific goals are different, McKinney and MEDC have a common interest in obtaining JDN's property by condemnation in order to create business development and employment opportunities in the community. The evidence demonstrates that McKinney and MEDC were both represented by Brown and Houser and they shared a common interest.

Second, we address JDN's argument that McKinney did not assert the common interest privilege in its privilege log. JDN does not point us to any authority for the proposition that the common interest privilege is separate from the attorney-client privilege or that it must be specifically asserted. Rather, case law suggests that the "common-interest" privilege is a part of the attorney-client privilege. *See In re Auclair,* 961 F.2d at 69–70 (attorney-client privilege is not waived when more than one person seeks consultation with attorney on matter of common interest, even if attorney does not accept employment); *Harris,* 74 Tex. at 6, 11 S.W. at 923; *see also* 36 TEX. JUR.3D *Evidence* § 536.

Third, we address JDN's argument that, even if the common interest privilege applies, document nos. 33a and 47 pre-date the anticipation of litigation. JDN argues

Texas Rule of Evidence 503(b)(1)(C) applies only during a pending action and cites *In re Dalco* as support for its argument. *In re Dalco*, 186 S.W.3d 660, 666–67 (Tex.App.-Beaumont 2006, orig. proceeding [mand. denied]). However, rule 503(b)(1)(C) and *In re Dalco* address the joint-defense privilege, which applies when multiple parties to a lawsuit represented by different attorneys communicate among themselves. JDN does not point to any authority to support the proposition that the "pending action" provision contained in rule 503(b)(1)(C) applies to entities who share a common interest and are represented by the same counsel.

Accordingly, we conclude the trial court did not abuse its discretion when it determined McKinney did not waive, by disclosure to MEDC, the ability to assert privilege.

### 3. Offensive–Use Doctrine

JDN argues McKinney waived any privilege pursuant to the offensive-use doctrine for three of the documents, as follows: document nos. 96, 97a, and 106. JDN argues: (1) McKinney is seeking affirmative relief by condemning JDN's property; (2) the *in camera* documents provide direct evidence that O & S Holdings controls McKinney's power of eminent domain, which establishes condemnation fraud; and (3) McKinney is attempting to lower an "iron curtain" of silence by preventing JDN from using the documents, Houser from being deposed, and witnesses from being questioned about the documents. McKinney concedes it is seeking affirmative relief. However, McKinney responds that the privileged documents are not outcome determinative and JDN has not shown the evidence is not available from other sources.

### a. Applicable Law

To show a waiver of privilege under the offensive-use doctrine, the party seeking discovery must establish: (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted; and (3) disclosure of the privileged information is the only means by which the aggrieved party may obtain the evidence. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993) (orig. proceeding); *see Alford v. Bryant*, 137 S.W.3d 916, 921 (Tex.App.-Dallas 2004, pet. denied). If any one of these requirements is not met, the trial court must uphold the privilege. *Republic Ins.*, 856 S.W.2d at 163. Waiver based on the offensive use of a privilege applies to confidential, attorney-client communications. *Republic Ins.*, 856 S.W.2d at 164; *see Alford*, 137 S.W.3d at 921.

### b. Application of the Law to the Facts

JDN does not argue the evidence is unavailable from other sources and does not point us to any evidence in the record supporting the third element of the offensive-use doctrine establishing the evidence is not available from other sources. Instead, it claims McKinney is preventing JDN from using the documents, Houser from being deposed, and witnesses from being questioned about the documents. If any one of the three requirements of the offensive-use doctrine is not met, the trial court must uphold the privilege. *See Republic Ins.*, 856 S.W.2d at 163. Accordingly, we conclude the trial court did not abuse its discretion when it determined McKinney did not waive, pursuant to the offensive-use doctrine, the ability to assert privilege.

### 4. Crime–Fraud Exception

JDN argues McKinney seeks to use the attorney-client and work-product privileges to shield conduct intended to deceive or mislead JDN so, pursuant to the crime-fraud exception, the "documents" are discoverable. JDN contends the crime-fraud exception applies because McKinney intentionally and knowingly misrepresented the amount of JDN's property it sought to condemn and it wrongfully seeks to acquire JDN's property by condemnation on behalf of a private developer for a non-public purpose. JDN claims the privileged documents and emails prove McKinney's fraud. McKinney responds that JDN has not established a *prima facie* case of fraud or a nexus between each document sought and the alleged fraud.

### a. Applicable Law

 Once a party demonstrates the privilege applies, the burden shifts to the party seeking production to prove an exception exists. *See Marathon Oil*, 893 S.W.2d at 589–90. The crime-fraud exception found in Texas Rule of Evidence 503(d)(1) provides there is no privilege under rule 503 if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud. Tex.R. Evid. 503(d)(1); *see Coats v. Ruiz*, 198 S.W.3d 863, 876 (Tex.App.-Dallas 2006, no pet.). The crime-fraud exception applies only if: (1) the party asserting it establishes a *prima facie* case of contemplated fraud; and (2) there is a relationship between the document for which the privilege is challenged and the *prima facie* proof offered. *See Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex.1992).

 The *prima facie* case requirement is met when the proponent offers evidence establishing the elements of fraud and that the fraud was ongoing or about to be committed when the document was prepared. *See Coats*, 198 S.W.3d at 876. Mere allegations of fraud are insufficient. *See id.* at 877. The fact that the plaintiff's cause of action involves fraudulent conduct is insufficient. *See id.* The fraud alleged to have occurred must have occurred at or during the time the document was prepared and in order to perpetrate the fraud. *See id.*

 In addition to a finding the discovery proponent has satisfied a *prima facie* case of fraud, the trial court must also make a finding that a nexus exists between the privileged documents and the alleged fraud. *Granada Corp.*, 844 S.W.2d at 227; *Freeman v. Bianchi*, 820 S.W.2d 853, 861–62 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding). This nexus must be established for each privileged document. *Freeman*, 820 S.W.2d at 861.

### b. Application of the Law to the Facts

 JDN did not specify in its amended motion to compel to which documents the crime-fraud exception to the privilege applied. In its petition for a writ of mandamus, JDN states broadly that the crime-fraud exception applies to "these documents." Also, JDN states McKinney's "position on these issues is directly contradicted by the statements, comments, and negotiations set forth within the e-mails JDN seeks to compel." However, JDN's general assertions in both its amended motion to compel and its petition for a writ of mandamus do not specify the nexus between each of the "documents" it seeks to compel and its claims of fraud. The nexus must be established for each privileged document. *See Freeman*, 820 S.W.2d at 861. Accordingly, we conclude the trial court did not abuse its discretion when it

determined the documents were discoverable and the crime-fraud exception did not apply.

JDN's second issue in this original proceeding is decided against it.

## B. Production of Privileged Documents

In its sole issue in this original proceeding, McKinney argues the trial court abused its discretion when it granted, in part, JDN's amended motion to compel with regard to 13 of the 14 documents the trial court determined were not privileged, as follows: document nos. 1a, 5i, 32, 35, 47, 69a, 90, 100, 103a, 105b, 105c, 107, and 108. McKinney does not argue the trial court abused its discretion when it determined document no. 103b was not privileged. McKinney contends: (1) it made a *prima facie* showing of privilege; (2) it did not waive privilege and the crime-fraud exception to privilege does not apply; and (3) the communications only have to facilitate the rendition of legal services, not actually contain legal advice. JDN responds that the trial court's *in camera* review of the documents "trumps" or takes precedence over McKinney's *prima facie* proof of privilege. Also, JDN claims the documents are not privileged because Houser was acting in a business capacity. In addition, JDN contends McKinney waived the privilege by undue delay, disclosure to a third party, and offensive use, and the crime-fraud exception applies.

### 1. Applicable Law

The Texas Rules of Civil Procedure define the general scope of discovery to include nonprivileged matter that is relevant to the subject matter of the action. TEX.R. CIV. P. 192.3(a); *In re Rogers*, 200 S.W.3d 318, 321 (Tex.App.-Dallas 2006, orig. proceeding). Article V of the Texas Rules of Evidence sets out the recognized list of privileges normally available to litigants. TEX.R. EVID. arts. 501–10. Texas Rule of Evidence 503 precludes discovery of the confidential communications made between the client and his attorney. *See* TEX.R. EVID. art. 503; *Marathon Oil*, 893 S.W.2d at 589. This privilege attaches to the complete communication between the attorney and his client. *Marathon Oil*, 893 S.W.2d at 589. The subject matter of the information communicated between the attorney and his client is irrelevant when determining whether the privilege applies. *Id.* Privilege attaches to legal advice and factual information included in completed communications between the attorney and his client. *Id.*

Also, Texas Rule of Civil Procedure 192.5(b) precludes discovery of an attorney's work product. *See* TEX.R. CIV. P. 192.5(b); *Marathon Oil*, 893 S.W.2d at 589. The work product exemption shields the attorney's mental impressions, opinions, conclusions, and legal theories. *See* TEX.R. CIV. P. 192.5(b)(1); *Marathon Oil*, 893 S.W.2d at 589. The exemption provides a privileged area within which the attorney can analyze and prepare the case. *See Marathon Oil*, 893 S.W.2d at 589; *see also* TEX.R. CIV. P. 192.5(d) (work product is assertion of privilege). The exemption extends not only to documents the attorney generates, but also to materials prepared by, mental impressions developed, and communications between the party or its representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents, in anticipation of litigation. *See* TEX.R. CIV. P. 192.5(a); *Marathon Oil*, 893 S.W.2d at 589.

When a party satisfies the procedural requirements of privilege and tenders the documents to the trial court, the trial court must conduct an *in camera* inspection. *Marathon Oil*, 893 S.W.2d at

590. The trial court determines whether the privilege applies during the *in camera* inspection. *Id.* In a mandamus proceeding, an appellate court may conduct its own *in camera* inspection to determine whether a trial court properly applied the law of privilege to the documents. *Id.* Also, in mandamus proceedings, the party resisting discovery bears the burden of establishing a clear abuse of discretion by the trial court. *In re CSX,* 124 S.W.3d 149, 151 (Tex.2003) (orig. proceeding); *In re Rogers,* 200 S.W.3d at 322.

 A trial court abuses its discretion by ordering discovery that exceeds the scope permitted by the Texas Rules of Civil Procedure. *In re CSX,* 124 S.W.3d at 152; *In re Rogers,* 200 S.W.3d at 321. Mandamus is appropriate to protect confidential documents from discovery when those privileged documents have been improperly ordered disclosed. *See In re Living Ctrs. of Tex., Inc.,* 175 S.W.3d 253, 256 (Tex.2005) (orig. proceeding). As a matter of law, there is no adequate remedy by appeal from a decision denying a privilege. *Walker,* 827 S.W.2d at 839–44.

### B. Application of the Law to the Facts

After an *in camera* inspection of the documents, the trial court granted JDN's amended motion to compel document nos. 1a, 5i, 32, 35, 47, 69a, 90, 100, 103a, 103b, 105b, 105c, 107, and 108 because these documents were not privileged. However, the trial court's order expressly denied JDN's amended motion to compel with respect to these documents on the basis of undue delay, third-party waiver, the offensive-use doctrine, and the crime-fraud exception.

 Document nos. 1a, 5i, 32, 35, 47, 69a, 90, 100, 103a, 105b, 105c, 107, and 108 have been provided to this Court for an *in camera* inspection. After conducting

an *in camera* inspection and considering the arguments of the parties as to these documents, we address, in turn, each document:

(1) Document no. 1a. This document is a communication from Houser to a McKinney City Council Member, the CEO and President of MEDC, and the McKinney City Manager. It contains information regarding strategy. We conclude document no. 1a is privileged.

(2) Document no. 5i. This document is a single email from the CEO and President of MEDC to Houser that, by itself, does not reveal anything privileged. However, document 5i is a part of a string of emails that are privileged. As such, it is part of the context and subject of this privileged string of emails. We conclude document no. 5i is privileged.

(3) Document no. 32. This document is an email from an employee of McKinney or MEDC to the McKinney City Manager, the McKinney Assistant City Manager, the CEO and President of MEDC, Houser, and an employee of McKinney or MEDC. A courtesy copy or "cc:" of the email was sent to the Assistant to the City Manager and two additional employees of McKinney or MEDC. There is handwriting on the document. We conclude the handwriting does not address anything confidential. Document no. 32 is not privileged.

(4) Document no. 35. This document is identical to document no. 32, however, the handwriting is not on the document. Document no. 35 is not privileged for the same reasons document no. 32 is not privileged.

(5) Document no. 47. This is an email from a MEDC employee to the

McKinney City Manager, a McKinney City Council Member, Houser, and three employees of McKinney or MEDC. There is nothing confidential contained in this document. Document no. 47 is not privileged.

(6) Document no. 69a. This document is an email from Houser to the CEO and President of MEDC and it contains confidential information. As a result, document 69a is privileged.

(7) Document no. 90. This document is an email from Houser to the McKinney City Manager and the Assistant to the City Manager regarding the case. Also, the document contains handwritten notes. There is nothing confidential in this document. Document no. 90 is not privileged.

(8) Document no. 100. This is an email from Houser to the CEO and President of MEDC with a courtesy copy or "cc:" to Brown and the McKinney City Manager. This document discusses strategy. Document no. 100 is privileged.

(9) Document no. 103a. This document is an email between employees of McKinney or MEDC generally discussing research Houser is conducting respecting the JDN property. Document no. 103a is privileged.

(10) Document no. 105b. This is an email from the McKinney Assistant City Manager to Houser and the Assistant to the City Manager. The email discusses strategy as well as issues relating to negotiations with O & S Holdings. Document no. 105b is privileged.

(11) Document no. 105c. This document is an email from the Assistant to the City Manager to the McKinney Assistant City Manager and Houser. The document is part of an email string containing document no. 105b. As

such, it is part of the context and subject of this privileged string of emails. Document no. 105c is privileged.

(12) Document no. 107. This document is an email from Houser to the McKinney City Manager, the CEO and President of MEDC, a McKinney City Council Member, the Assistant to the City Manager, and an employee of McKinney or MEDC. It discusses legal strategy and the attorney's research. Document no. 107 is privileged.

(13) Document no. 108. This document is an outline for discussion in a City Council executive session and was prepared by a nonlegal, McKinney employee. McKinney has not identified any attorney-client, confidential information in this document. Document no. 108 is not privileged.

We conclude the trial court abused its discretion when it granted JDN's amended motion to compel with respect to document nos. 1a, 5i, 69a, 100, 103a, 105b, 105c, and 107 because these documents are privileged. However, we also conclude the trial court did not abuse its discretion when it granted JDN's amended motion to compel with respect to document nos. 32, 35, 47, 90, and 108 because these documents are not privileged.

McKinney's sole issue in this original proceeding is decided in its favor with respect to document nos. 1a, 5i, 69a, 100, 103a, 105b, 105c, and 107 and against it with respect to document nos. 32, 35, 47, 90, and 108.

## V. CONCLUSION

Even if the trial court abused its discretion by granting McKinney possession of more property than it sought to have condemned in the amended writ of possession,

JDN has an adequate remedy by appeal. Also, the trial court did not abuse its discretion when it denied JDN's amended motion to compel based on its determination that document nos. 2, 5f, 5g, 23, 27, 31a, 33a, 55, 56b, 56c, 56d, 73a, 76d, 76e, 76h, 76i, 89a, 91, 94, 95a, 95b, 96, 97a, 99a, 100, and 106. were privileged, the privilege was not waived by undue delay, disclosure to a third party, or offensive-use, and the crime-fraud exception does not apply. JDN's first and second issues in this original proceeding are decided against it.

JDN's petition for a writ of mandamus, cause no. 05–06–01314–CV, is **DENIED.**

The trial court abused its discretion when it granted JDN's amended motion to compel with respect to document nos. 1a, 5i, 69a, 100, 103a, 105b, 105c, and 107 because these documents are privileged. However, the trial court did not abuse its discretion when it granted JDN's amended motion to compel with respect to document nos. 32, 35, 47, 90, and 108 because these documents are not privileged. McKinney's sole issue in this original proceeding is decided in its favor with respect to document nos. 1a, 5i, 69a, 100, 103a, 105b, 105c, and 107 and against it with respect to document nos. 32, 35, 47, 90, and 108.

McKinney's petition for a writ of mandamus, cause no. 05–06–01315–CV, is **DENIED,** in part, and **CONDITIONALLY GRANTED,** in part. The trial court is **ORDERED** to vacate the portion of its "Order on JDN Real Estate—McKinney's Motion to Compel" compelling McKinney to produce document nos. 1a, 5i, 69a, 100, 103a, 105b, 105c, and 107 to JDN and to issue an order in compliance with this opinion. The writ of mandamus will issue only if the trial court fails to comply with this Court's opinion and order.