**In re George J. PARNHAM and George J. Parnham, Attorney at Law, P.C., Relators.**

No. 01–06–00236–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 21, 2006.

Alan Brandt Daughtry, Gary J. Washington, Charles L. Babcock, Jackson Walker L.L.P., James A. Drexler, Peter McLain, Houston, TX, for Appellant.

Dean Blumrosen, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

TIM TAFT, Justice.

Relators, George J. Parnham and George J. Parnham, Attorney at Law, P.C. (collectively, "Parnham"), have filed a petition for writ of mandamus complaining of the trial court's March 9, 2006 order sanctioning Parnham's counsel, Jackson Walker, L.L.P., James A. Drexler ("Drexler"), and Peter R. McLain with disqualification for examining and attempting to copy privileged documents of real party in interest, Clara Harris, and her counsel, Dean M. Blumrosen.[1] In three issues, Parnham complains that the trial court abused its discretion by (1) applying an improper standard, that articulated in *In re Meador*,[2] to disqualify his counsel; (2) failing to apply the proper standard, that articulated in *In re Nitla*;[3] and (3) concluding that the evidence presented satisfied the *Nitla* standard.

We conditionally grant the petition for writ of mandamus.

## Background

In the underlying suit, Harris sued Parnham over fees and alleged breaches of fiduciary duty stemming from Parnham's representation of Harris in a prior matter. During the course of litigation, Parnham's counsel, Drexler, requested inspection of certain documents that were responsive to Parnham's discovery requests.[4] Harris's counsel, Blumrosen, agreed to permit inspection at his office on October 19, 2005. Because Blumrosen was to be out of town on that day, he drafted a letter to Drexler,

stating as follows: "Please find documents responsive to your discovery requests in the conference room Bates stamped H0001–H01326. After you have reviewed the documents, please inform my assistant, Andrew Lee, of the documents you are requesting copies of and we will send them out to a copy service for you." Blumrosen instructed his legal assistant, Michelle Tucker, to give Drexler the letter immediately upon Drexler's arrival.

On the morning of October 19, Drexler and Gary Washington[5] arrived at Blumrosen's office. It is undisputed that Tucker gave Drexler the letter from Blumrosen and that Drexler read it. The parties dispute whether Washington saw the letter. The parties do not dispute that Andrew Lee, Blumrosen's law clerk, led Drexler and Washington into the conference room and that, upon entering, Washington asked, "Is this everything?" and Lee replied, "Yes." The parties dispute the events that followed.

Lee stated in his affidavit that he had personally Bates stamped the documents that Blumrosen authorized for inspection and had placed them in separate folders on the conference table. Lee admitted that he had also inadvertently placed the entire litigation file on the conference room table. Lee stated that, although he remained in the conference room while Drexler and Washington examined the documents and he witnessed the taking of notes, Lee was actively engaged in working on other matters and did not see the specific documents that Drexler and Washington were review-

---

1. The respondent is the Honorable Sharolyn Wood, judge of the 127th District Court of Harris County, Texas. The underlying suit is *Clara Harris v. George J. Parnham and George J. Parnham Attorney at Law, P.C.*, No. 2004–62381 (127th Dist. Ct., Harris County, Tex.).

2. 968 S.W.2d 346, 351–52 (Tex.1998).

3. 92 S.W.3d 419, 423 (Tex.2002).

4. These requests were Requests for Production numbered 15, 16, and 17.

5. Drexler is a solo practitioner; Washington is a first-year associate at Jackson Walker.

ing. Lee stated that, after approximately two hours, Drexler and Washington left to confer in the hall. According to Lee, Drexler and Washington later returned and stated that they had contacted an outside copy service to pick up the documents that they had chosen to copy. Lee stated that Tucker called Blumrosen to ask if Drexler and Washington were permitted to use their own outside copy service. Washington briefly spoke with Blumrosen, then hung up and cancelled his copy service. According to Lee and Tucker, Drexler and Washington sorted through the documents that they wanted copied, they handed them to Lee, and Tucker immediately sent the documents to the copy service.

Drexler stated in his affidavit that, when Tucker handed him Blumrosen's letter, she "stated to me that all of the files in the room had been put there for our review." Drexler contended that the documents on the conference room table were not separated or segregated in any manner and that he was never advised that any of the documents were privileged or not subject to inspection. Drexler stated that, at one point Washington left, without explanation. While he was gone, Drexler realized that some of the documents that he was reviewing might constitute privileged or confidential materials that were not intended for inspection. Drexler stated that he immediately stopped looking through the documents and advised Washington of the issue. Drexler attested that he "took only generic, non-substantive notes" and "made a conscious effort not to absorb the substance of any such privileged or confidential material."

Washington's affidavit recounted the events as Drexler had stated them. In addition, Washington explained that he left the room to call a copy service when he realized that some of the documents would need to be copied and that he did so without talking to Drexler. Washington stated that he advised Tucker that the copy service was on the way. Moments later, Tucker transferred a phone call to him from Blumrosen. Blumrosen stated that he would have the documents copied and sent over to Drexler and Washington. Washington agreed and cancelled his own copy service. Subsequently, Drexler asked Washington to step outside, where he explained that there might be confidential documents mixed in with the authorized documents on the conference table. Washington attested that they then stopped the inspection.

The next day, Blumrosen returned to town and reviewed the copies that had come back from his copy service. He immediately noticed that his entire attorney-client correspondence file had been copied.[6] None of these documents were Bates stamped. Blumrosen immediately contacted Washington, who denied that he or Drexler had taken any notes.[7] Blumrosen then called, e-mailed, and wrote a letter to Charles L. "Chip" Babcock, lead counsel at Jackson Walker for Parnham, stating that despite Blumrosen's strict instructions in his letter restricting the scope of discovery to the documents Bates-stamped H0001–H01326, Washington and Drexler had apparently gone through his entire litigation file and had sent non-Bates-stamped, privileged, and confidential documents to be copied. In addition, pursuant to Texas

---

6. Pertinent here is that Harris was incarcerated in Gatesville, Texas, and that the facility did not permit her to correspond with Blumrosen by telephone. Consequently, virtually all of the discussion that had taken place between Harris and Blumrosen was contained in these letters.

7. Drexler and Washington have since each provided a short page of notes.

Rule of Civil Procedure 193.3(d), Blumrosen asked that any notes taken by Washington and Drexler be destroyed or returned.

Blumrosen and Babcock exchanged a series of letters, attempting to arrive at a Rule 11 agreement concerning the use of any privileged or confidential information that Drexler and Washington may have reviewed. After numerous attempts failed, Harris moved for disqualification of Jackson Walker, Drexler, and McLain. On March 9, 2006, the trial court granted the motion. It is from this order that Parnham seeks relief.

## Standard of Review

 A party may seek mandamus relief from an order of disqualification. *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 133 (Tex.1996). A party is entitled to mandamus relief if a trial court abuses its discretion or violates a legal duty and the party has no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *In re Taylor*, 113 S.W.3d 385, 389 (Tex. App.-Houston [1st Dist.] 2003, orig. proceeding). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839; *see In re Taylor*, 113 S.W.3d at 389. With respect to factual issues, matters are committed to the trial court's discretion, and the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. The relator must establish that the trial court reasonably could have reached only one decision. *Id.* at 840. With respect to a trial court's determination of legal principles, however, review is much less deferential. *Id.* A trial court has no discretion to determine what the law is or how to apply the law. *Id.* A clear failure by the trial court to analyze or to apply the law correctly will constitute an abuse of discretion and may result in the issuance of an extraordinary writ. *Id.*

## The Applicable Law

In his first issue, Parnham complains that the trial court abused its discretion by disqualifying his counsel based upon an inapplicable standard, that articulated in *In re Meador*, 968 S.W.2d 346, 351–52 (Tex.1998). In his second and third issues, Parnham complains that the trial court erred by failing to apply the applicable standard, that articulated in *In re Nitla*, 92 S.W.3d 419, 423 (Tex.2002), and by disqualifying his counsel without evidence to satisfy that standard. We conclude that neither standard applies and that this case is instead governed by Texas Rule of Civil Procedure 193.3. *See* Tex.R. Civ. P. 193.3(d).

### A. *In re Meador*

 In his first issue, Parnham contends that the trial court improperly disqualified his counsel based upon an application of the *Meador* standard. Specifically, Parnham contends that *Meador* is inapplicable when, as here, opposing counsel inadvertently produces privileged materials during the normal course of discovery.

Harris contends that *Meador* applies because her privileged materials were received outside the normal course of discovery. Specifically, Harris contends that, because Blumrosen's letter restricted the scope of discovery to those Bates-stamped documents within a specific range (H0001–H01326) and the unauthorized documents, which were not Bates-stamped at all, let alone numbered within the specified range, fell outside of that scope, the documents were received outside the normal course of discovery. We disagree.

In *Meador*, the Texas Supreme Court considered whether the interests of justice required disqualification of a lawyer who had received an opponent's privileged materials "outside the normal course of discovery." *Meador*, 968 S.W.2d at 351–53. There, Peterson, who was working as an executive assistant at the Nichols Machinery Company ("CLN"), discovered materials concerning a suit against CLN by Meador, a former employee. *Id.* at 348. Peterson copied several documents, including a settlement letter, various correspondence, information about settlement funds, and notes about the Meador case. *Id.* Peterson then quit her job and took the copies with her. *Id.*

Peterson delivered a copy of the settlement letter to Meador and to Meador's attorney, Masterson. *Id.* at 349. When Peterson met with Masterson, Peterson also retained him to represent her in her own claims against CLN. *Id.* Later, during CLN's deposition of Meador, Meador gave CLN a copy of the settlement letter and divulged that other documents had been copied. *Id.* Months later, in response to a notice of deposition and subpoena duces tecum from CLN, Peterson gave copies of all the documents to Masterson, who copied them. *Id.* Peterson produced the documents at her deposition a week later. *Id.*

Upon seeing the documents, CLN asserted that the documents contained privileged information and demanded that all copies of the documents be returned. *Id.* When Masterson refused to return the copies, CLN moved to disqualify him from representing Meador. *Id.* The trial court ordered Masterson to return the copies to CLN and not to use them, but refused to disqualify Masterson. *Id.* CLN sought mandamus relief in the court of appeals. *Id.*

The court of appeals granted relief, ordering Masterson disqualified on the grounds that Masterson had failed to contact CLN when he first received the settlement letter from Peterson. *Id.* The court determined that Masterson's conduct fell below the standard that an attorney who receives confidential information must follow, pursuant to American Bar Association ("ABA"), Formal Opinion 94–382. *Id.* Masterson sought mandamus relief in the Texas Supreme Court. *Id.*

■ The supreme court granted mandamus relief, holding that Masterson should not have been disqualified. *Id.* at 354. The court stated that the ABA Formal Opinion is an aspirational goal, not a standard for disqualification, and that no specific Texas disciplinary rule applies to the circumstances of this case. *Id.* at 351. The court explained that a lawyer should not be disqualified for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification. *Id.* at 350. To determine whether "the interests of justice require disqualification," a trial court should consider the following factors:

(1) whether, at the time of the disclosure, the attorney knew or should have known that the material was privileged;

(2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

(3) the extent to which the attorney reviews and digests the privileged information;

(4) the significance of the privileged information (*i.e.,* the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice);

(5) the extent to which the movant may be at fault for the unauthorized disclosure; and

(6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id.* at 351–52 (referred to herein as "the *Meador* standard").

The supreme court emphasized that

*these factors apply only when a lawyer receives an opponent's privileged materials outside the normal course of discovery.* If a lawyer receives privileged materials because the opponent *inadvertently* produced them in discovery, the lawyer ordinarily has no duty to notify the opponent or voluntarily return the materials. Rather, the producing party bears the burden of recovering the documents by establishing that the production was involuntary. *See Granada Corp. v. First Court of Appeals,* 844 S.W.2d 223, 226 (Tex.1992).... [W]e express no opinion on the proper standard for disqualifying an attorney who was directly involved in wrongfully procuring an opponent's documents.

*Id.* at 352 (emphasis added).

Thus, the *Meador* standard would apply in the instant case only if Parnham's counsel had received Harris's documents outside the normal course of discovery.

Parnham does not cite any authority, and we find none, that defines "the normal course of discovery." Discovery is "compulsory disclosure, at a party's request, of information that relates to the litigation ... [and is] primarily conducted through interrogatories, depositions, requests for admissions, and requests for production." BLACK's LAW DICTIONARY 498 (8th ed.2004); *see* TEX.R. CIV. P. 192.7 (defining written discovery as "requests for disclosure, requests for production, and inspection of documents and tangible things"). A request for production is "a party's written request that another party provide specified documents or other tangible things for inspection and copying." BLACK's LAW DICTIONARY at 1331.

Here, Harris contends that the trial court properly applied the *Meador* standard because the court "clearly made a fact finding that the conduct at issue was, indeed, done outside the normal course of discovery." [8] However, the trial court's order stated that the presence of the unauthorized documents in the conference room was inadvertent and that their viewing occurred during "the authorized document production."

The record shows that Drexler made a written request to inspect Harris's documents that were responsive to Parnham's

---

**8.** The trial court did not cite *Meador* in its order, but appears to have applied the same considerations as are articulated in the *Meador* standard. The order stated that the trial court disqualified Parnham's counsel on the basis that they had inspected "core work product and privileged documents of the plaintiff, including communications between plaintiff and her counsel." The trial court found that the presence of these materials in the conference room was inadvertent and that Parnham's counsel's knowledge of the inadvertent production was indicated by the attempt to have the materials sent to Parnham's counsels' own copy service. These findings could be construed as an application of factors (1) and (5) of the *Meador* standard. *See In re Meador,* 968 S.W.2d 346, 351–52 (Tex. 1998). In addition, the trial court found that "the inspection of the confidential, privileged documents of plaintiff was not incidental or de minimus." This finding could be construed as an application of factors (3) and (4) of the *Meador* standard. *See id.* at 352. Further, the trial court found that the inspection was a serious violation of Harris's fundamental rights and that the exclusion of the information is not sufficient to remedy the harm. These findings could be construed as an application of factors (4) and (6) of the *Meador* standard. *See id.*

requests for production numbered 15, 16, and 17. Drexler and Washington went to Blumrosen's office on October 19, 2005 to inspect these documents. Thus, Drexler and Blumrosen were in the course of conducting discovery when they went to Blumrosen's office. It was during the session at Blumrosen's office that the unauthorized documents appeared. By contrast, in *Meador*, opposing counsel received documents that a non-party, of her own volition, had stolen from a party and then delivered to opposing counsel. *See Meador*, 968 S.W.2d at 349. The receipt of the documents in *Meador* was clearly outside the normal course of discovery.

We conclude that the unauthorized documents were inadvertently produced during the normal course of discovery, and, therefore, the *Meador* standard does not apply. *See Meador*, 968 S.W.2d at 352. We reject Harris's equating *her intended scope* of discovery, as outlined in Blumrosen's letter, with the "normal course of discovery." Accordingly, we sustain Parnham's first issue.

## B. *In re Nitla*

In his second issue, Parnham contends that the standard articulated in *Nitla* is applicable to the instant case and that, as required by *Nitla*, Harris failed to show that she was actually prejudiced by a review of privileged materials and that the trial court lacked any means lesser than disqualification to remedy the harm. *See Nitla*, 92 S.W.3d at 423. We disagree that *Nitla* is applicable to the instant case.

In *Nitla*, a pharmaceutical company, Nitla, sued Bank of America ("BOA"). *Id.* at 420. During discovery, BOA asserted that certain documents were privileged and submitted them for *in camera* inspection in the trial court. *Id.* The trial court determined that the documents were not privileged and ordered production. *Id.*

BOA moved to stay production until the matter could be reviewed in the court of appeals because, once Nitla viewed the documents, BOA would suffer irreparable harm. *Id.* at 421. During a discovery hearing, the trial court refused to stay production and physically handed to Nitla the documents that BOA had submitted for *in camera* inspection. *Id.* BOA sought mandamus relief. *Id.*

This Court held that most of the documents were, in fact, privileged and granted relief. *Id.* BOA then sought in the trial court to disqualify Nitla's counsel, alleging that it was improper for Nitla to have reviewed the documents because BOA had stated an intent to seek appellate relief. *Id.* at 421–22. The trial court determined that Nitla had extensively reviewed the documents, but refused to disqualify Nitla's counsel. *Id.* at 421. BOA again sought mandamus relief. *Id.* Applying *Meador*, this Court held that Nitla's counsel had to be disqualified. *Id.* Nitla sought mandamus relief in the supreme court. *Id.*

The supreme court determined that the *Meador* standard was inapplicable because Nitla had received the documents directly from the trial court during a discovery hearing. *Id.* at 423. The court explained that, although there is not a precise standard for disqualification when a party reviews documents that are later deemed privileged, the "guiding principles" are (1) whether the review of the documents caused actual harm to the moving party and (2) whether disqualification is necessary because the trial court lacks any lesser means to remedy the harm. *Id.*

Because Nitla had received the documents directly from the trial court during a discovery hearing, and thus there was no inadvertence in the production of the documents, the facts in *Nitla* are significantly distinguishable from those in the instant

case. Here, importantly, the trial court found that the documents had been inadvertently produced. We thus hold that *Nitla* does not govern the instant case. Accordingly, we overrule Parnham's second issue.[9]

## C. Texas Rule of Civil Procedure 193.3

 As Parnham correctly notes, Texas Rule of Civil Procedure 193.3, known as the "snap-back rule," contemplates that, on occasion, certain materials or information may be inadvertently produced to an opposing party without any intent on the part of the producing party to waive a claim of privilege. Tex.R. Civ. P. 193.3(d). The rule provides that

> [a] party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if—within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made—the producing party amends the response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and

any copies pending any ruling by the court denying the privilege.

*Id.* Hence, rule 193.3 permits a party to "snap-back," or to retrieve, materials that it has inadvertently produced and to maintain a claim of privilege with respect to the documents.

 Rule 193.3 does not specifically restrict the use of the information by the recipient party. However, once an applicable privilege is asserted and attaches, the information is protected from use. *See In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex.2004) (outlining steps to asserting applicable privileges and stating that documents deemed privileged are not subject to discovery and may not be considered by factfinder, even if factfinder is trial court).

We conclude that rule 193.3 governs instances of inadvertent disclosure that occur during discovery, as here, and that it does not provide for, nor does it appear to contemplate, disqualification of the recipient party's counsel.[10]

## Disqualification

 The trial court found that Harris's counsel, Blumrosen, had inadvertently produced the documents at issue to Parnham's counsel, Drexler and Washington. The next day, when Blumrosen viewed the

---

**9.** Having determined that *Nitla* does not apply, we decline to address Parnham's third issue, which contends that Harris failed in her burden to meet the requisite elements of the *Nitla* standard.

**10.** We note that the Federal Rules of Civil Procedure have been amended to prohibit the use or disclosure of information inadvertently produced, as follows:

> If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a

> party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

> Fed.R.Civ.P. 26(b)(5)(B) (effective December 1, 2006).

documents that had been returned from the copy service, he discovered that his attorney-client correspondence file, comprised of letters from Harris to Blumrosen concerning the instant case, had been included in the documents sent for copying. The parties do not dispute that Parnham's counsel was never in possession of the documents outside of Blumrosen's office and that all of the documents were recovered from the copy service and were never sent to Parnham's counsel. Thus, there are no documents to "snap back" to counsel, but an issue of privilege exists as to their use.

When the attempts to arrive at a rule 11 agreement regarding the use of the information contained in the documents failed, Harris sought disqualification. The parties do not dispute that there was not a hearing on the applicability of privileges to the documents at issue herein; rather, Harris moved directly for disqualification.[11] The trial court concluded that the exclusion of any "improperly gained information" was not sufficient to protect Harris and ordered disqualification of Parnham's counsel. The trial court also concluded that the documents were privileged, presumably based upon the *in camera* review. Rule 193.3(d) contemplates a hearing on the privilege, and if the privilege is sustained, then counsel may assert it despite any inadvertent disclosure. The assertion of the privilege allowed in rule 193.3(d) thus contemplates that such documents will not be used in the litigation. The rule does not contemplate disqualification of counsel.

 Disqualification is a severe remedy that "can result in immediate and palpable harm, disrupt trial court proceed-

ings, and deprive a party of the right to have counsel of choice." *Nitla,* 92 S.W.3d at 422. Hence, an exacting standard must be applied in determining a motion to disqualify counsel. *Id.* We hold that the applicable rule in this case is Texas Rule of Civil Procedure 193.3 and that rule 193.3 does not provide authority for disqualification of counsel who review inadvertently disclosed materials during the course of discovery.

### Conclusion

We hold that the trial court abused its discretion in disqualifying Parnham's counsel. We therefore conditionally grant Parnham's petition for writ of mandamus and direct the trial court to vacate its March 9, 2006 order of disqualification. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

---

**11.** Texas Rule of Civil Procedure 193.4 provides that "[a]ny party may at any reasonable time request a hearing on an objection or claim of privilege." Tex.R. Civ. P. 193.4.

Hence, the rules contemplate that a hearing may be held to address any issues regarding the applicability of asserted privileges.