**Petition for Writ of Mandamus Conditionally Granted and Opinion filed January 15, 2019.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-18-00892-CV**

---

## IN RE FEDD WIRELESS LLC., FEDD HOLDINGS LLC., WILLIAM C. DALEY TRUST, ET AL., Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-54156**

---

## O P I N I O N

In this original proceeding, we consider whether a party waived attorney-client privilege as to a document the party relied on, but later abandoned, in seeking traditional summary judgment relief.  The relators are FEDD Wireless, LLC, FEDD

Holdings, LLC, ("FEDD"),[1] William C. Daley Trust, Sarah Hughes Daley Trust, Michael W. Murphy Trust 1972, and several individuals or entities who invested in FEDD (collectively "Plaintiffs"). The real parties-in-interest are Flowserve Corporation and Flowserve US Inc. (collectively "Flowserve").

On September 10, 2018, the Honorable John Wooldridge, visiting judge of the 189th District Court of Harris County, signed an order striking from the record a document the parties refer to as a due-diligence report ("Due-Diligence Report"). The trial court's order also required Plaintiffs to return to Flowserve all copies of the document. The trial court found that the Due-Diligence Report, which Flowserve attached to and then withdrew from a traditional motion for summary judgment, was an inadvertently produced attorney-client privileged communication. On October 16, 2018, the trial court signed a separate order denying Plaintiffs' motion to compel production of the same document based on the crime-fraud exception to the attorney-client privilege.

Plaintiffs filed a petition for writ of mandamus asking this court to compel the trial court to vacate its September 10, 2018 and October 16, 2018 orders. *See* Tex. Gov't Code Ann. § 22.221 (West Supp. 2017); *see also* Tex. R. App. P. 52.

We conditionally grant the petition for writ of mandamus in part and direct the trial court to vacate its September 10, 2018 order. Our disposition moots relators' challenge to the October 16, 2018 order.

---

[1] Relators refer to FEDD Wireless, LLC, and FEDD Holdings, LLC, collectively as "FEDD." We do as well.

## Factual and Procedural Background

Plaintiffs include all equity investors who owned membership interests in FEDD. According to Plaintiffs' allegations, in April 2011 Flowserve acquired FEDD Wireless (the developer of wireless industrial monitoring technology) in an asset sale, at a price alleged to be well below market value. Closing the sale required Flowserve to obtain approval from FEDD's investors in accordance with FEDD's operating agreement and applicable Texas law. Plaintiffs allege that Flowserve "monetarily incentivized" three key FEDD representatives to approve and execute the sale by paying $500,000 to Rick Lawson, FEDD's founder, inventor of FEDD's technology, and sole manager, who allegedly kept $250,000 and distributed the remaining $250,000 to other investors, Bob and Beth Jordan. Plaintiffs allege that Lawson and the Jordans claimed to hold a controlling interest in FEDD and, in exchange for $500,000, represented that they could force the purchase to close.

A key dispute involves the way controlling interests in FEDD were to be calculated, which allegedly affects whether the necessary approval of FEDD's investors was secured. Flowserve claims a majority of the FEDD members and shareholders, as calculated by "shares" or "units," approved the transaction, which was all the operating agreement required. Plaintiffs, on the other hand, contend that the operating agreement required the investors' membership interests to be calculated based on each investor's overall capital contributions, not the number of "shares" or "units" owned.

Under Flowserve's interpretation of the operating agreement, Lawson and the Jordans purportedly owned over sixty percent of the membership interests in FEDD based on the total number of "shares" or "units" owned. Under Plaintiffs' view of the

3

agreement—calculating ownership interests by overall capital contributions—Lawson and the Jordans owned less than one percent of the membership interests. According to Plaintiffs, a majority of ownership interests as calculated by capital contributions did not approve of the sale, and the sale is therefore invalid.

In 2014, Plaintiffs sued Flowserve, alleging claims for fraud, aiding and abetting Lawson's breach of fiduciary duty, unjust enrichment, money had and received, civil conspiracy, and civil aiding and abetting. Plaintiffs also sought equitable relief and a declaratory judgment to set aside the sale. Plaintiffs' claims are based in part on allegations that Flowserve, in conjunction with Lawson and the Jordans, misrepresented or concealed material aspects and terms of the sale from Plaintiffs, including the extent of assets transferred. Plaintiffs also allege that Flowserve and Lawson misled investors with respect to communications that sought investors to certify their share ownership and consent to the sale.

On May 22, 2018, Flowserve filed a traditional motion for summary judgment, seeking judgment on all causes of action. Flowserve attached the Due-Diligence Report to the motion as Exhibit I and specifically referenced it by name in a list of exhibits on which it relied in seeking summary judgment. The Due-Diligence Report is dated April 1, 2011 and purports to be a memorandum from Samuel Barrett, Flowserve's in-house counsel, to other Flowserve representatives. The memorandum's subject line states, "Legal Due Diligence Summary—Asset Acquisition of FEDD Wireless LLC and

4

License of IP from FEDD Holdings, LLD (collectively, 'FEDD')."[2]  Flowserve's motion cites to Exhibit I as support for the statement, "[a]fter execution of the MOU, Flowserve learned that FEDD had many previously undisclosed minority investors—including the Roanoke and Charleston Investors mentioned above."  The motion was signed by Flowserve's attorney in charge.  *See* Tex. R. Civ. P. 8.  Flowserve also attached an affidavit of Rob Miller, Flowserve's Director of After Market Services, who was Flowserve's project leader for the transaction.  In his affidavit, Miller averred that he had "read the above and foregoing Traditional Motion for Summary Judgment."  Miller's affidavit is dated May 17, 2018.  The record does not indicate whether the Due-Diligence Report was disclosed prior to its attachment to Flowserve's motion, and we presume that the document was first disclosed on May 22, 2018 when Flowserve filed its motion for summary judgment.

On June 11, 2018, Plaintiffs filed a response to Flowserve's motion for summary judgment.  Plaintiffs attached the Due-Diligence Report to their response as Exhibit 76.  Plaintiffs relied on the report throughout their response.  Plaintiffs argued that the report supported their claims and constituted either direct or circumstantial proof of Flowserve's fraudulent intent.

On June 19, 2018, twenty-eight days after Flowserve disclosed the Due-Diligence Report and eight days after Plaintiffs filed their response, Flowserve filed an amended traditional motion for summary judgment, which removed the Due-Diligence Report as

---

[2] The Due-Diligence Report has been filed *in camera* with this court.  We have carefully reviewed the report but do not detail its content in this opinion due to Flowserve's assertion of privilege.

an exhibit. The same day, Flowserve's counsel emailed a letter to Plaintiffs' counsel advising that the Due-Diligence Report filed with Flowserve's original motion for summary judgment was an attorney-client privileged communication inadvertently attached to the motion and that Flowserve did not intend to waive the attorney-client privilege attached to the document. Citing Texas Rule of Civil Procedure 193.3, Flowserve's counsel requested that Plaintiffs desist from all use of the report and return all copies in their possession. One week later, Flowserve filed a "Motion to Prohibit Use," in which it sought an order preventing Plaintiffs "from using or attempting to use in any manner" the Due-Diligence Report. Flowserve contended the document was protected by attorney-client privilege and was inadvertently included as part of its motion for summary judgment. Flowserve attached to the motion to prohibit use an affidavit of its attorney in charge, which stated: (1) "[n]either I, nor Flowserve, nor anyone at my firm intended to use that document, or to rely on it, or to waive the attorney-client privilege associated with it"; and (2) "I first learned of the inadvertent production close to midnight on Monday, June 11, 2018, when Plaintiffs filed their response to Flowserve's motion for summary judgment."

Plaintiffs filed a response to Flowserve's motion to prohibit use and a motion to compel the report's production.

The trial court heard Flowserve's motion to prohibit use on September 4, 2018. No testimony was offered or admitted at the hearing. On September 10, 2018, the trial court signed an order striking the Due-Diligence Report and requiring Plaintiffs to return all copies to Flowserve. The trial court found that the Due-Diligence Report was protected by attorney-client privilege and inadvertently produced. The order contains

6

no finding as to when Flowserve "actually discover[ed]" that the production was made. *See* Tex. R. Civ. P. 193.3(d).

Plaintiffs filed a motion to reconsider. The court denied reconsideration and refused to compel production of the report in an order signed October 16, 2018.

Plaintiffs filed the petition for writ of mandamus now before us.

## Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy at law, such as an appeal . *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

## Analysis

Plaintiffs argue that the trial court abused its discretion in granting "snap-back" relief and that Plaintiffs lack adequate remedy by ordinary appeal. They contend that rule 193.3(d) does not justify the trial court's orders because the rule applies only to a privileged document that, unlike the report, was produced in response to "written discovery." Alternatively, assuming the rule applies, Plaintiffs contend Flowserve did not inadvertently disclose the report; Flowserve did not invoke the rule's snap-back provision timely; and the report is not protected in any event due to the crime-fraud exception.

## A.  Applicability of Rule 193.3(d)

When a rule of procedure is clear and unambiguous, we construe the rule's language according to its plain or literal meaning.  *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding).  Pertinent portions of rule 193.3 provide:

> **193.3. Asserting a Privilege**
>
> A party may preserve a privilege from written discovery in accordance with this subdivision.
>
> . . .
>
> (d) *Privilege Not Waived by Production*.  A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if—within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made—the producing party amends the response, identifying the material or information produced and stating the privilege asserted.  If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court denying the privilege.

Tex. R. Civ. P. 193.3(d).

Commonly referred to as the "snap-back" provision,[3] it was "designed to protect the inadvertent disclosure of privileged material in order to reduce the cost and risk involved in document production." *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d at 438–39. The rule allows a party to assert a claim of privilege to material or information produced inadvertently without intending to waive the privilege so long as the producing party claims the privilege within ten days of actually discovering the production. *See id*.; Tex. R. Civ. P. 193.3 cmt. 4.

Plaintiffs assert that rule 193.3(d) is unavailable to protect privileged information disclosed outside the written discovery context, such as when, as here, a party discloses a privileged document by relying on it to obtain traditional summary judgment. Plaintiffs cite several cases that have applied (or assumed applicability of) the snap-back provision in the context of discovery production.[4] Plaintiffs also refer to federal decisions that either discuss the federal rule or describe the state rule.[5]

---

[3] *See In re Tex. Windstorm Ins. Ass'n,* 549 S.W.3d 592, 598–99 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding).

[4] *See In re Ortuno*, No. 14-08-00227-CV, 2008 WL 2339800, at *2 (Tex. App.—Houston [14th Dist.] May 6, 2008, orig. proceeding) (per curiam) (mem. op.); *Warrantech Corp. v. Computer Adapters Servs*., 134 S.W.3d 516, 525 (Tex. App.—Forth Worth 2004, no pet.); *see also In re Parnham*, 263 S.W.3d 97, 105 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding); *In re AEP Tex. Cent. Co*., 128 S.W.3d 687, 693–94 (Tex. App.—San Antonio 2003, orig. proceeding).

[5] *See Jeanbaptiste v. Wells Fargo Bank, N.A*., No. 3:14-CV-0264-K, 2014 WL 6790737, at *3 (N.D. Tex. Dec. 1, 2014); *Alpert v. Riley*, 267 F.R.D. 202, 209 n.2 (S.D. Tex. 2010) ("Like [Federal Rule of Evidence] 502, [Rule 193.3(d)] does not appear to govern the effect of disclosures that do not occur in discovery.").

Citing *In re Texas Windstorm*, Flowserve says our court has held that rule 193.3 applies to documents produced outside formal written discovery. In that case, we applied rule 193.3(d)'s snap-back provision and held that a privileged document inadvertently filed as an exhibit to a response to a motion to compel retained its protected status because the producing party complied with the snap-back provision. *In re Tex. Windstorm Ins. Ass'n*, 549 S.W.3d at 599–600. We conditionally granted mandamus relief to correct the trial court's order denying snap-back relief. *Id*.

The applicability of rule 193.3 to privileged information produced with a traditional summary judgment motion was not a contested issue in any of the decisions cited by the parties. We disagree with Plaintiffs and conclude that the rule applies to the present circumstances by operation of Texas Rule of Evidence 511(b)(2). Rule 511 states the general rule governing when a privilege is waived by voluntary disclosure. "A person upon whom these rules confer a privilege against disclosure waives the privilege if: . . . the person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged . . . ." Tex. R. Evid. 511(a). Exceptions apply, however, regardless whether the disclosure occurs in the context of written discovery. As stated in subsection (b), "[n]otwithstanding paragraph (a), the following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the lawyer-client privilege or work-product protection." Tex. R. Evid. 511(b). One of the excepted circumstances set out is inadvertent disclosure in a state civil proceeding: "[w]hen made in a Texas state proceeding, an inadvertent disclosure

does not operate as a waiver if the holder followed the procedures of Rule of Civil Procedure 193.3(d)." Tex. R. Evid. 511(b)(2). Rule 511(b)(2) does not state that the inadvertent disclosure must occur in response to a written discovery request for the exception to apply. Thus, the exception to waiver of a lawyer-client or work-product privilege applies to any inadvertent disclosure in a state civil proceeding so long as the party asserting the privilege complies with rule 193.3(d). Accordingly, rule 193.3(d) applies with respect to the Due-Diligence Report notwithstanding that the report was first disclosed as a motion for summary judgment exhibit rather than in response to a written discovery request.

## B.    Did Flowserve comply with Rule 193.3(d)?

To secure rule 193.3(d)'s benefit, a party must show that it disclosed privileged material or information without intending to waive the privilege and that it claimed the privilege within ten days after the party actually discovered the disclosure of privileged information occurred. *See* Tex. R. Civ. P. 193.3(d). If, within the ten-day period, the producing party amends its response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court. A snap-back motion or amendment that is filed more than ten days after the movant discovers that a privileged document has been produced is untimely, and snap-back relief should be denied in that instance. *See In re Samson Lone Star, LLC*, No. 06-10-00050-CV, 2010 WL 3008670, at *2–3 (Tex. App.—Texarkana Aug. 3, 2010, orig. proceeding) (mem. op.).

12

Plaintiffs argue first that Flowserve cannot benefit from rule 193.3(d) because Flowserve intended to waive any privilege by affirmatively relying on the report in its summary judgment motion and, hence, its disclosure was not inadvertent. The question is whether Flowserve disclosed the Due-Diligence Report without intending to waive a claim of privilege. *See In re Carbo Ceramics, Inc*., 81 S.W.3d 369, 376 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). In his affidavit, Flowserve's counsel stated that "[n]either I, nor Flowserve, nor anyone at my firm intended to use that document, or to rely on it, or to waive the attorney-client privilege associated with it." He testified that the Due-Diligence Report was inadvertently attached to the motion.

Assuming without deciding that Flowserve presented sufficient evidence to support the trial court's finding that the report's disclosure was made inadvertently without intent to waive a claim of privilege, we agree with Plaintiffs' alternative argument that Flowserve did not show that it timely invoked the rule's snap-back provision. Rule 193.3(d)'s text indicates that the ten-day period to amend the response begins to run on the date the producing party "actually discovers" that the material has been produced. *See* Tex. R. Civ. P. 193.3(d). The rule's focus is on intent to waive the privilege, not the intent to produce the communication. Tex. R. Civ. P. 193.3, cmt. 4; *In re AEP*, 128 S.W.3d at 693. Thus, as explained in the rule's comment, the ten-day period does not necessarily run from the date the information or material was produced but from the date the party first became aware that privileged information was disclosed. *See* Tex. R. Civ. P. 193.3, cmt. 4; *see also*

*Paxton v. City of Dallas*, 509 S.W.3d 247, 255 n.40 (Tex. 2017); *In re AEP*, 128 S.W.3d at 693. It is possible these dates could coincide.

Flowserve's attorney in charge signed the motion for summary judgment on May 22. Counsel's signature constitutes a certificate that he read the motion. *See* Tex. R. Civ. P. 13 ("The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper . . . ."). An attorney who reads and signs a motion is presumably aware of the motion's contents. Flowserve's counsel therefore knew that the Due-Diligence Report was attached to and relied on in the motion.

Flowserve also attached to its motion the affidavit of its representative Rob Miller, who confirmed that he read the motion. Having read the motion, Flowserve's representative—the project leader for the transaction—knew that the motion relied on and attached the Due-Diligence Report.

With its motion to prohibit use, Flowserve presented an affidavit from its attorney in charge, stating:

> An attorney-client privileged communication entitled "Legal Due Diligence Report," prepared by Flowserve's in-house counsel, Samuel Barrett, and directed to his business associates was inadvertently attached as Exhibit I Flowserve's [sic] Traditional Motion for Summary Judgment. I have since amended Flowserve's Traditional Motion for Summary Judgment to remove all reference to that exhibit. Neither I, nor Flowserve, nor anyone at my firm intended to use that document, or to rely on it, or to waive any attorney-client privilege associated with it.
>
> I first learned of the inadvertent production close to midnight on Monday, June 11, 2018, when Plaintiffs filed their response to

14

Flowserve's motion for summary judgement and included a copy of the privileged communication as "Exhibit 76" to their response.

In our view, this affidavit does not constitute legally sufficient evidence that could have supported the trial court's implied finding that Flowserve first became aware on June 11 that a privileged communication had been disclosed on May 22. Counsel's assertion that he first learned of the inadvertent production on June 11 is inconsistent with the knowledge attributed to counsel by rule 13 in signing the motion on May 22. In his affidavit, Flowserve's counsel offered no factual circumstances showing that he lacked subjective awareness that the Due-Diligence Report was attached to and filed with the summary judgment motion on May 22 despite having read and signed the motion. Absent such evidence, and without evidence from Miller (who also read the motion) explaining why he lacked subjective awareness that Flowserve was disclosing a privileged document with its motion on May 22, Flowserve has not presented evidence that the date the "producing party actually discovers that such production was made" was a date other than May 22. *See* Tex. R. Civ. P. 193.3(d). Even assuming Flowserve's counsel was subjectively unaware of the motion's reliance on the Due-Diligence Report, Miller's affidavit shows conclusively that Flowserve was aware that its motion relied on the report and Flowserve presented no evidence from Miller proving otherwise.

A party who fails to screen documents diligently before producing them does not waive a claim of privilege. *In re AEP*, 128 S.W.3d at 693. Flowserve's counsel did not state in his affidavit that he failed to diligently screen the exhibits attached to the motion or failed to diligently read the motion despite signing it.

15

Notwithstanding rule 13's operation, instances may foreseeably arise when an attorney who signs a motion or authorizes his or her signature to be affixed to a motion in fact lacks subjective awareness of certain matters contained in the filed motion. For example, if a motion is revised (or not revised) inadvertently before filing, the attorney may lack subjective awareness of certain assertions contained in the version of the document actually filed. Or, the attorney may have instructed that an exhibit be removed before a document is filed, but the exhibit inadvertently was not removed. In such instances, to claim privilege and invoke the snap-back remedy, counsel should offer reasonably detailed factual circumstances explaining why counsel lacked subjective awareness of the contents of a motion counsel read and signed. *Cf. In re Tex. Windstorm Ins. Ass'n*, 549 S.W.3d at 599 (affidavit explaining how counsel lacked actual awareness that privileged documents were attached to filed copy of response to motion to compel); *In re Certain Underwriters at Lloyd's London*, 294 S.W.3d at 907 ("While evidence that documents are sent creates an inference that the documents were reviewed around that time, that inference vanishes when opposing evidence is introduced to show that the document was not reviewed."; counsel provided affidavit explaining that documents produced in response to subpoena were not reviewed until after production). To the extent that the Due-Diligence Report was disclosed inadvertently and without intent to waive the privilege, Flowserve knew of the report's disclosure on May 22 because the fact of the report's disclosure is readily apparent from the face of the motion and Flowserve's corporate representative and attorney in charge read the motion. If Flowserve desired to preserve the privilege, its remedy was to invoke the snap-back provision within ten days of May 22.

16

Flowserve did not amend its motion for summary judgment to remove the Due-Diligence Report and request its return until June 19, 2018, more than ten days after May 22. This snap-back request was untimely under rule 193.3(d). *See In re Samson Lone Star, LLC*, 2010 WL 3008670, at *2–3. Accordingly, Flowserve waived any claim of privilege.

The visiting judge clearly abused his discretion by granting snap-back relief because the record conclusively shows that Flowserve did not, within ten days after it discovered that the Due-Diligence Report had been produced inadvertently as part of its motion for summary judgment, amend the motion to omit the document and assert the attorney-client privilege, as required by Rule 193(d).

## C. Lack of Adequate Remedy by Appeal

Appeal from a trial court's discovery order is not adequate if: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *In re Eurecat US, Inc.*, 425 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). Remedy by appeal may be inadequate when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, and the reviewing court is unable to evaluate the effect of the trial court's error on the record before it. *Walker*, 827 S.W.2d at 843–44. When the missing discovery cannot be made part of the record, the court of appeals must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is

intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate. *Id*. at 843; *see also In re Frank A. Smith Sales, Inc.*, 32 S.W.3d 871, 875 (Tex. App.—Corpus Christi 2000, orig. proceeding) (relator did not have an adequate remedy by appeal for the trial court's order denying discovery of a settlement agreement because the agreement was confidential and could not be made part of the record).

The visiting judge ordered Plaintiffs to return all copies of the Due Diligence Report to Flowserve, and no party asserts that Plaintiffs have failed to comply with that order. Plaintiffs will be unable to include the Due Diligence Report as part of the record in any appeal from the final judgment, and our court will be unable to determine in any future appeal from the final judgment whether the order to return the report "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1. We conclude that Plaintiffs lack an adequate remedy by appeal.

## Conclusion

For these reasons, we conditionally grant the petition for writ of mandamus in part and direct the visiting judge to vacate the September 10, 2018 order striking the Due-Diligence Report and requiring Plaintiffs to return all copies to Flowserve.[6]  We are confident the visiting judge will act in accordance with this opinion.  The writ of mandamus shall issue only if the visiting judge fails to do so.


                                        /s/     Kevin Jewell
                                                Justice


Panel consists of Justices Wise, Jewell, and Poissant.

---

[6] We need not decide Plaintiffs' additional complaint regarding the October 16, 2018 order, which seeks the same relief via the crime-fraud exception to the attorney-client privilege.